## MARY E. GORMLY v. WM. M. GORMLY, JR.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 4, 1889—Decided November 11, 1889.

If two persons, fully informed as to the facts of an estate in which they are both interested, but doubtful as to the extent of their respective legal rights therein as against each other, separately take advice of counsel and are informed that it would require tedious and expensive litigation to determine the question, and a written agreement is thereupon entered into settling amicably their respective interests, a bill in equity for the cancellation of the agreement will be dismissed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 184 October Term 1889, Sup. Ct.; court below, No. 628 June Term 1887, C. P. No. 1, in Equity.

On May 17, 1887, Mary E. Gormly filed a bill in equity against Wm. M. Gormly, Jr., (and others as to whom there was subsequently a discontinuance,) which in substance averred:

That James Gormly, by his will dated January 8, 1828, duly admitted to probate on June 2, 1829, devised an estate in tail male to his two sons, James and William, in certain real estate in the city of Pittsburgh, and that the said son James having died, his share, the one half part, descended to his oldest son, John B. Gormly, who was plaintiff's husband; that upon the death of said John B. Gormly, plaintiff's husband, on November 16, 1871, she became entitled to dower in the said one half of said real estate, being the one third part thereof, or one sixth of the whole, the said real estate having remained undivided; that the defendant, Wm. M. Gormly, Jr.. who is the brother of plaintiff's deceased husband, upon the death of the latter without issue, claimed to be the heir in tail, entered into possession of said undivided one half part of said real estate, and received the rents, issues and profits and so continued to do; that on November 26, 1873, the plaintiff, under mistake of law and fact, in that she was ignorant that said real estate was subject to her dower rights and of the amount and value of her

dower interest in the same, entered into an agreement under seal with said Wm. M. Gormly, Jr., whereby she agreed to accept and receive from him, the one twelfth part of the rents, issues and profits of said real estate in full settlement and satisfaction of her claim for dower as widow of said John B. Gormly; that the said one twelfth part of the rents, issues and profits was but one half of the amount to which she was justly and legally entitled, and that said agreement, whereby she ignorantly and mistakenly relinquished the other one half of the yearly amount to which she was also justly and legally entitled, was made and executed without any consideration whatsoever being paid to her therefor; that from the time of the execution of said agreement until the present the plaintiff had received only the one twelfth part of the rents, etc., as stipulated in said agreement, and defendant refused to pay her the one sixth thereof; that the rents arising from said undivided one half of said real estate amounted to about $2,000 per annum, etc. The bill also averred that said Wm. M. Gormly, Jr., was not the heir to said undivided one half of said real estate, but that upon the death of plaintiff's husband without issue, the same descended to him and others named as co-defendants, being heirs at law of the testator, as tenants in common in fee simple; and that said Wm. M. Gormly, Jr., not being lawful heir to said real estate, had no legal right or authority to enter into said agreement, and the contract lacked the element of mutuality. Upon the foregoing facts, the bill prayed that the agreement of November 26, 1873, be surrendered for cancellation, and that Wm. M. Gormly should account, etc.

The cause being put at issue by answer and replication, it was referred to *Mr. C. C. Montooth*, as examiner and master, who on April 12, 1889, filed a report concluding:

That the plaintiff, at the time of entering into the contract, appendix B of the bill, was entitled to dower in the undivided one half of the property described, equivalent to one third thereof, or one sixth of the rents, issues and profits of the whole.[1]

That at the time of entering into said contract, the plaintiff was ignorant of her legal right of dower in said property and of the amount and value thereof, and continued to be ignorant thereof, until a short time prior to the filing of her bill.[2]

That her consent to and execution of said contract was obtained by defendant under circumstances of imposition, and that undue and unjust advantage was taken of her ignorance and of the confidence which her family relation to the defendant led her to repose in him.[3]

That she was induced hastily and hurriedly, without due consideration, knowledge or legal advice, and in such manner as to operate as a surprise upon her, to enter into said contract.[4]

That under circumstances of ignorance, imposition, undue advantage, misplaced confidence, concealment and surprise, the plaintiff entered into said contract, whereby she relinquished the one half of the yearly income to which she was legally entitled, without any consideration being given, paid or promised to her by the defendant.[5]

The master therefore recommended a decree, substantially as prayed for in the bill.

To the report of the master, the defendant excepted, alleging inter alia, that the master erred in his findings.[1 to 5] The exceptions having been overruled by the master, were renewed before the court on the filing of his report, and after argument, the court, SLAGLE, J., on July 13, 1889, filed the following opinion:

James Gormly made his will, dated January 28, 1828, which was proved June 2, 1829, by which he devised his real estate as follows:

"Second. I give and bequeath to my beloved wife, Mary, all my real and personal estate during her natural life, and at her death, she is to dispose of the personal property as she thinks fit, without restriction.

"Third. At the death of my beloved wife, I bequeath my real property in the following manner: The houses to be rented, the ground rent, taxes and repairs of the houses to be taken from the rent, and the remainder to be divided equally between my two sons, James and William, during their lifetime. My sons, James and William, are to give to their sister, my daughter Mary Ann Fisher, the sum of fifty dollars, each, yearly and every year during her natural life, for her own use, out of the proceeds of the estate; this money to be paid quarterly; or as

she may need it, according to the judgment and discretion of my executors. If any of my sons be taken away by death, and dying without lawful issue, their part, after paying the yearly sum of fifty dollars, aforesaid, to my daughter, Mary Ann Fisher, during her natural life, falls to the surviving one, during his natural life; and at their death, the rents of the real property are to descend to the nearest male heirs whose name is Gormly; to be equally divided among them from generation to generation, successively. If any of my devisees falls in debt, the creditor shall have no power over any of the real property, but only over the yearly income of said devisee coming from the rent of said estate. And it is my will that no part of the real property shall ever be sold, but remain a perpetual entail to the nearest male heirs whose surname is Gormly, as above said. . . . ."

James and William survived their father. James died in 1870, leaving lawful issue, two sons, John B., who was the elder, and Wm. M., the defendant, and three daughters. John B. was married to the plaintiff and died November 16, 1871, without issue. On November 26, 1873, an agreement was entered into between Wm. M. Gormly, Jr., and Mary E. Gormly, in which, after reciting all the above facts at length, and reciting further, " And whereas, doubts have arisen as to the right of dower of the said Mary E. Gormly in said real estate or any part thereof, and also as to the amount of the same; now, in order to settle fully all questions arising under said will as to the right of dower of said Mary E. aforesaid, and the amount of the same, the said parties hereto, in consideration of the premises, have agreed and do hereby agree and bind themselves as follows, to wit: said Wm. M. Gormly to pay and the said Mary E. Gormly to receive one twelfth of the rents, less repairs, taxes, etc., in full settlement and satisfaction of her claim for dower as widow of said John B. Gormly, deceased, so far as relate to said estate, in which her husband had an interest under the will of said James Gormly aforesaid."

A settlement of the rents, up to the date of the agreement, was made, and thereafter the defendant accounted to her for her share, in accordance with the agreement, until the year 1887, when on May 17, 1887, this bill was filed, in which the above facts are again recited, copies of the will of James Gormly

and the agreement of November 26, 1873, being attached, and praying that the agreement of November 26, 1873, be rescinded and canceled, and that an account of the rents be taken. The ground of her claim for relief is stated in the seventh and eighth paragraphs of the bill as follows :

" Seventh. That as your oratrix is advised and verily believes the said Wm. M. Gormly, Jr., is not the heir to the said undivided one half of said real estate, but that upon the death of the last tenant in tail, the husband of your oratrix, without lawful issue, the same descended to all the defendants, as heirs at law of the testator, as tenants in common, in fee simple, subject to the dower rights of your oratrix.

" Eighth. That on or about the 26th day of November, 1873, your oratrix being ignorant of the matter set forth in the seventh paragraph of the bill, as well as of the amount and value of her dower interest in said real estate, and the rents, issues and profits thereof, entered into a written agreement, under seal, with the said Wm. M. Gormly, Jr., believing him to be the heir to, and lawful owner of said undivided one half of said real estate, whereby she being under mistake of the law as well as of the essential facts, as above stated, agreed " etc. ; and in the ninth paragraph :

" Ninth. That said Wm. M. Gormly, Jr., not being the lawful heir and owner of said undivided one half, had no legal right or authority to enter into said agreement, and that said contract lacks the element of mutuality ; and that said agreement, whereby your oratrix ignorantly and mistakenly relinquished one half of the yearly amount to which she was justly and legally entitled, was made and executed without any consideration whatever being paid to her therefor," etc.

The bill as originally filed included all the heirs at law of James Gormly the 2d, but for some reason was discontinued as to them, and left to stand as against Wm. M. Gormly, Jr., probably because plaintiff concluded that it did not affect her interest, and as his title had not been disputed by the other heirs, and he is in possession of the property, her rights could be properly determined against him alone.

The master very properly says there are two questions for discussion : 1. That touching the character of the estate in John B. Gormly, deceased, in his lifetime, and necessarily that

of his wife, the plaintiff here, since his death.    2. Whether the evidence adduced before the master is sufficient to warrant a decree of rescission and cancellation of the agreement of date November 26, 1873; the investigation of this question being dependent wholly upon the conclusion reached in the final. inquiry.

The master found, as to the first question, as follows: " The master concedes that the question is not free from difficulty, but in the light in which he views the will, together with the accepted manner of descent under the common law, he is constrained to hold that John B. Gormly became vested, as the oldest son of James Gormly, the younger, with an estate tail in the undivided one half of the testator's property."    And, as to the second question as follows: " That under circumstances of ignorance, imposition, undue advantage, misplaced confidence and surprise, the plaintiff entered into said contract, whereby she relinquished the one half of the yearly income to which she was legally entitled, without any consideration being given, paid or promised to her by the defendant."

In the view we take of the case it is not necessary to determine what estate was in James Gormly, Jr.; whether, as claimed by plaintiff's counsel and found by the master, an estate tail in the undivided one half, which descended to his oldest son John B., or, as claimed by counsel for defendant, a life estate in James, Jr., and an estate tail in his sons, John B. being a tenant in tail of the undivided one fourth; or whether, as might be claimed, the provision for perpetuity was utterly void, and, upon the death of the tenants for life, the entire estate went to. the heirs at law of the testator.    It is true, as said by the master, the case is not free from difficulty.

It is sufficient for the determination of the case that we cannot concur with the master upon his finding as to the second proposition.

It will be observed that the bill does not set forth any imposition, undue advantage, misplaced confidence, concealment, or surprise; and there is no testimony in the case to justify such finding.    The only plea in the bill is " ignorance of matters set forth in the·seventh paragraph of the bill, as well as the amount and value of her dower in said real estate, and the rents, issues and profits thereof."

The only question of fact of which she alleges ignorance is as to the value of the interest. If this is intended to refer to the amount in money, of the rents, etc., it is not sustained by the evidence. It appears that until after this agreement was made, the rents were collected by Wm. R. Gormly, uncle of the defendant and of plaintiff's husband John B., and as to this she says, "My husband was sick and I took the checks to bank and had them cashed;" so that she had the same opportunity to know the amount of the rents, that the defendant had. But aside from this means of knowledge, it appears that prior to the signing of the agreement, the rents to that date were settled. The exact date has not been given, but the agreement was not signed until after William's return from his wedding trip. Plaintiff says, "William afterwards gave me two or three notes for back rents. These notes were given me about the time William was going to be married. Uncle William Gormly had the back rents in his possession at that time." William testifies to the same matter.

But aside from this, under the agreement the exact amount of rents is immaterial, as she will get her share whatever they may be. If she has sold her interest for a gross sum, it would have been material; under the agreement made, it is not.

It follows, then, that the only matter as to which she was ignorant was a question of law and not of fact. What was the condition of the parties as to this matter?

—The court here reviewed the testimony to some extent, showing the fact that the plaintiff and defendant had separately taken legal advice before the agreement of November 26, 1873, was executed, and proceeded:

There was no relation of confidence between the plaintiff and defendant, and if there were, there is no evidence that he did anything to prevent her from obtaining full information, or that he was better informed than she was. It seems that there was an opinion by those interested that no female could have any interest in the property. The defendant held to that opinion. The plaintiff was advised otherwise. Both took counsel and received no decided opinion as to their rights, and the counsel for each thought it would require tedious and expensive litigation to settle the question. To avoid this, the agreement was made.

In Graham v. Pancoast, 30 Pa. 97, Justice SHARSWOOD says: " The power of a chancellor to decree the rescission of a contract and order a surrender, though undoubted, is one of the most delicate powers which he is ever called upon to exercise, and is never to be put forth except in a clear case. It is not sufficient to put him in motion, that suspicion and distrust have been thrown over a transaction. Inadequacy of price, improvidence, surprise and mere hardship, have each been held sufficient to stay the active interposition of a chancellor. Yet no one of these, nor all combined, furnishes an adequate reason for a judicial rescission of a contract. For such action, something more is demanded, such as fraud, mistake or illegality. . . . . . In regard to the value of the lots, and their liability to sale, both parties had equal means of information, and when that is the case, a representation, though untrue, will not be considered fraudulent." And in Light v. Light, 21 Pa. 412, Judge BLACK says: " Everyone is conclusively presumed to know the law; without this presumption no law could be executed. Those who desire to violate it could easily misunderstand it, and ignorance could be feigned where it did not exist. If contracts were binding only on those who knew what construction the courts would put on them, few would stand."

In this case, under the evidence, the complaint of plaintiff is that at the time the contract was made, which she asks the court to rescind, she was not informed as to the construction the courts would give to the will of James Gormly, and the interest which her husband took under it. If the interest were plain, then she should know it; if it were doubtful, it was the proper subject of conpromise. Under the evidence in the case, the findings of the master cannot be approved. If there were more doubt as to these conclusions, the court would be slow to move, at this time, the contract having been in force for over fifteen years, without complaint. But aside from this, the court is clearly of opinion that the exceptions should be sustained, and the bill dismissed, at costs of plaintiff.

A formal decree having been entered dismissing the bill at the costs of the plaintiff, the plaintiff took this appeal, specifying that the court erred, inter alia: 1. In entering the decree sustaining the defendant's exceptions.[1 to 5]  2. In dismissing the bill at plaintiff's costs.

*Mr. Alfred Kerr*, for the appellant.

Counsel cited: Guthrie's App., 37 Pa. 10; Nace v. Boyer, 30 Pa. 99; Wheeler v. Smith, 9 How. 55; Willard's Eq. J., 66; Pusey v. Desbouvrie, 3 P. Wms. 316; 1 Story's Eq. J., §§ 117–18, 128, 133–4, 307–8, 331; Hunt v. Moore, 2 Pa. 105; Bispham's Eq., §§ 188, 232; 3 Greenl. Ev., § 253; Miskey's App., 107 Pa. 611; Darlington's App., 86 Pa. 512; Cunningham's App., 122 Pa. 464; Worrall's App., 110 Pa. 349.

*Mr. James S. Young* (with him *Mr. William L. Chalfant*), for the appellee.

Counsel cited: Light v. Light, 21 Pa. 407; Chamberlain v. McClurg, 8 W. & S. 31; Cook v. Wright, 1 B. & S. 554 (101 E. C. L. R. 559); Lies v. Stub, 6 W. 48; Rankin v. Mortimere, 7 W. 372.

PER CURIAM:

The opinion of the learned judge below is so full and satisfactory that we affirm this decree, for the reasons there given by him.

> Decree affirmed, and the appeal dismissed, at the costs of the appellant.

---

## JOHN BRADLEY v. CITY OF PITTSBURGH.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 4, 1889—Decided November 11, 1889.

1. Under the second proviso of § 9, act of March 22, 1877, P. L. 16, a city of the second class is not liable for the sheriff's and prothonotary's fees, in proceedings to enforce by lien a municipal claim for taxes, etc., so long as the lien is in full force and the property unsold thereon.
2. The matter of the costs of collection is properly included in the matter of "collection;" wherefore the proviso, so far as relating to the payment of the taxable costs of such a proceeding, is not unconstitutional on the ground that the subject is not indicated in the title of the act.