## Golden v. Ruhl.

*Contracts—Consideration—Forbearance—Doubtful liability.*

1. An agreement to forbear constitutes sufficient consideration to support a contract if there is a right to sue and a *bona fide* claim, even though the claim may not be valid.

2. Compromise of a doubtful liability is sufficient consideration to support a contract where the contract would have constituted a complete defence to an action on the claim thus compromised.

Motion for judgment *n. o. v.* C. P. Dauphin Co., Sept. T., 1919, No. 712.

*W. Justin Carter*, for plaintiff; *Oscar G. Wickersham*, for defendant.

HARGEST, P. J., Oct. 11, 1921.—This case was brought to recover on an agreement signed by the defendant, which is as follows: "I hereby agree this 3rd day of February, 1917, to pay the funeral expenses of Mrs. McDonnell, but shall not exceed $140. C. H. Ruhl, Penbrook, Pa."

The testimony at the trial developed that the plaintiff heard her mother, who was eighty-five years old, scream, and saw the driver of the defendant's baker wagon bring her mother into the plaintiff's house. The driver placed her in a chair, and Mrs. McDonnell said: "This man ran over me." The driver said: "No, she was only scared." At the time, Mary Golden's niece was lying dead, and Arthur C. Hauck, an undertaker, came to the house and found the old lady "with a broken pelvis, a broken leg and stomach crushed." (Testimony, page 12.) He took her to the Polyclinic Hospital, where she died Feb. 2nd. The plaintiff applied to Hauck for the burial of her mother, and told him that they did not want to incur any more expense than that incurred for the niece, which was $139, but that they had no money. Thereupon Mary Golden authorized Hauck to see the defendant, telling Hauck that she would not make any trouble or sue for damages if he paid the funeral expenses. (Testimony, page 16.) But at that time, her mother not having yet been buried, she was not thinking of bringing a suit. (Testimony, page 17.) Hauck, thereupon, together with John Golden, a brother of the plaintiff and son of the deceased, conferred with the defendant and his driver, and John Golden testified that in the conference the driver first denied that he had run over Mrs. McDonnell, "then afterwards he owned up and said he did run over her" with the "hind wheel of the wagon." (Testimony, page 43.) The next morning Hauck, the undertaker, called upon the defendant at market, and, as Hauck testified, communicated to the defendant that the Goldens "do not want

to make you any trouble and will be satisfied if you pay the funeral expenses." (Testimony, pages 10 and 11.)　The defendant testified that Hauck, instead of saying that the Goldens would not make him any trouble, used the word "prosecution," and said that he might be prosecuted for manslaughter. The defendant thereupon signed the paper above quoted.　Hauck buried Mrs. McDonnell, and the bill amounted to $139.50, which Mary Golden subsequently paid to Hauck.　The defendant refused to pay any part of it.

At the trial the case was submitted to the jury to determine whether, in making the agreement in writing, the defendant understood that he was securing from the plaintiff her forbearance in bringing suit against him for injuries to her mother, and they were told that if the agreement was made with the understanding on the part of the defendant that a suit might be brought against him and that the plaintiff would forbear bringing suit if he signed the agreement, that would be a good consideration moving to the defendant for the agreement which would sustain the contract and the plaintiff might recover.　But that, if the agreement was made because he was afraid of a criminal prosecution for manslaughter, there would be no consideration moving to the defendant, and in that event their verdict should be for the defendant.　The jury found for the plaintiff.

At the trial two points were reserved: One, "that there is no evidence in this case from which the jury could find that there was such forbearance as would amount to a good consideration passing between the plaintiff and the defendant in this suit;" and, the other, "that, under all the evidence in this case, the verdict must be for the defendant."

A motion for judgment notwithstanding the verdict was subsequently made.

## Discussion.

As to forbearance: The defendant contends that, because the plaintiff did not, at the time she authorized Hauck to confer with the defendant, contemplate suit, there was no question of forbearance; that there was no proof of negligence on the part of the defendant, and that this promise, in effect, was one to pay the debt of another, because it inured to the benefit of the undertaker.　We cannot agree with any of these positions.

It would be unconscionable to hold that the forbearance from bringing a suit, which the defendant secured, must have arisen from a fully formed plan to sue the defendant for the injuries to her mother, and that such intention should be completely formed before her mother was buried.　If the right exists to bring a suit, it is not necessary that the plan should first be decided upon before the forbearance is obtained.　Where the right exists, the plan to enforce the right may be subsequently developed.

"There is a good consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not:" 13 Corpus Juris, 316, note 92.

"Refraining from bringing a suit may furnish a consideration.　The actual forbearance or the promise to forbear to prosecute a claim on which one has a right to sue is universally held to be a sufficient consideration:" 13 Corpus Juris, 344, note 49.

In a few states it is held that forbearance to sue on an unfounded claim cannot support a promise, and that the claim must be an actually valid one in law.　This was the doctrine of the early English cases, but the doctrine of the large majority of states, and of the later English cases, is that "one has

a right to sue where his claim is reasonably doubtful, and that forbearance to enforce a claim which might reasonably be thought doubtful is a sufficient consideration, on the ground that the 'reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession:' " 13 Corpus Juris, 346, and note.

"The surrender of a doubtful claim of right is a good consideration for a contract:" Sutton v. Dudley, 193 Pa. 194. So, also, is the settlement of doubtful questions which "would require tedious and expensive litigation:" Gormly v. Gormly, 130 Pa. 467, 473.

A promise "to pay a specific sum on account of a liability for unliquidated damages is invalid, unless the promise be conditioned upon some new consideration, such as delay or forbearance or release:" Wimer v. Worth Township, 104 Pa. 317, 320. The converse of this case is that a promise to pay unliquidated damages is valid if based upon forbearance, and even forbearance to sue for a reasonable time is a sufficient consideration: Sidwell v. Evans, 1 P. & W. 383.

The result of the cases seems to be that if there is a right to sue and a *bona fide* claim, even though the claim has not been adjudged to be valid, and there is a forbearance to bring suit to enforce such a claim, such forbearance will constitute a sufficient consideration. We think that the facts in this case measure up to this standard. Mary Golden was the daughter of the injured woman. Her mother had been injured and died, and, according to the testimony of John Golden, the driver admitted having run over her. There was certainly a right to sue, either immediate or which might have been perfected by letters of administration. Whether the defendant was liable for negligence was doubtful. The question of negligence was not at issue, and evidence upon it was not admitted at the trial in this case. Mary Golden's right to sue could not be denied because she was not named as a party in the contract. The contract was made by the defendant with Hauck, her agent. It inured to her benefit. She was in fact, though not in form, a party to this contract; but even "one who is not a party to a contract may sometimes maintain an action upon it in his own name, where he is the only one who is beneficially interested in its performance, and where the party with whom it was actually made has ceased to have any real interest in it:" Depuy v. Loomis, 74 Pa. Superior Ct. 497. Even assuming that Hauck was the party with whom the contract was actually made, he ceased to have any interest in it when Mary Golden paid him the funeral expenses; but there was no contract with Hauck. There was no consideration for any contract with him. Whatever contract was made by him with Ruhl was made as the agent of Mary Golden and her brother. There is no question in this case of paying the debt of another. Ruhl had not engaged, by his contract, to pay the debt of another. He agreed to compromise his doubtful liability to the person who now brings the suit. Therefore, the authorities cited by the defendant's counsel as to forbearance to sue on a promise to pay the debt of another person do not apply. We are, therefore, of opinion that there was sufficient evidence for the jury to find such forbearance to sue on the part of the plaintiff as would support the consideration for the contract now sued upon.

As to compromise of a doubtful liability: This case was not submitted upon the theory that the agreement sued upon presented a compromise of a doubtful liability on the part of the defendant; but in considering the sixth point which was reserved, and which is, whether, under all the evidence in this case, the verdict must be for the defendant, we must take this into con-

sideration. A compromise of a disputed claim is a consideration sufficient to support an agreement of settlement, even though the claim is for negligence: Scranton Gas and Water Co. v. Weston, 57 Pa. Superior Ct. 355, 360, and cases cited.

"Where the parties treat upon the basis that the fact which is the subject of the agreement is doubtful, and the consequent risk each is to encounter is taken into consideration in the stipulation assented to, the contract will be valid, notwithstanding any mistake of one of the parties, provided there be no concealment or unfair dealing by the opposite party that would affect any other contract:" Perkins v. Gay, 3 S. & R. 327, 331; Brown v. Sloan, 6 Watts, 421; Logan v. Mathews, 6 Pa. 417; Gaynor v. Quinn, 212 Pa. 362.

"The compromise of an action of slander, in which the words laid in the declaration were not actionable, is a good consideration for a note for the payment of money:" O'Keson v. Barclay, 2 P. & W. 531.

Suppose the plaintiff had either brought suit against this defendant or had secured letters of administration and brought suit as administratrix against this defendant to recover damages for the death of her mother, in which the funeral expenses would have been an element of damage, could not the defendant have shown as a complete defence to such an action in trespass that the claim had been compromised and settled by the agreement now sued upon? We think he could, and, measured by this test, we also think that there was sufficient consideration for this agreement and that the present suit can be maintained.

For these reasons, we overrule the motion for judgment notwithstanding the verdict, and direct the prothonotary to enter judgment in favor of the plaintiff and against the defendant, upon the payment of the jury fee.

From William Jenkins Wilcox, Harrisburg, Pa.