**ISLAND BLOCK CORPORATION, appellant**

v.

**JEFFERSON CONSTRUCTION OVERSEAS, INC.**

No. 14,842

United States Court of Appeals

Third Circuit

Argued January 27, 1965

Decided July 13, 1965

*See, also, 349 F.2d 322*

Joseph McGowan, St. Thomas, Virgin Islands, *for appellant*

Philip M. Cronin, (Withington, Cross, Park & McCann), Boston, Mass., *for appellee*

Before MARIS, McLAUGHLIN and FREEDMAN, *Circuit Judges*

FREEDMAN, *Circuit Judge*

Plaintiff sued to recover $1,243.18, representing a discount in price of the cement block it sold to defendant and which it claims was not available because of defendant's noncompliance with the discount requirement. Defendant denied liability and counterclaimed for damages amounting to $10,000 for failure of plaintiff to deliver sufficient quantity and quality of block to meet its contract requirements.

The District Court found for the defendant on both claims. It entered judgment dismissing the plaintiff's suit and on defendant's counterclaim awarded it damages of $3,464.46, with interest, and an attorney's fee of $300.

The parties had discussed in January 1961 the possibility of plaintiff supplying cement building blocks which the defendant required for three construction projects in the Virgin Islands. One was for the construction of the Sugar Estates School and another was for the construction of the Nisky Elementary School, both for the Government of the Virgin Islands. The third was for the construction of a marina and necessary facilities for the National Park Service of the Department of the Interior. Following some discussion between the parties plaintiff sent defendant a letter dated February 27, 1961, wherein plaintiff presented what it described as a "revised bid" for the approximately 50,000 to 60,000 blocks required for the three projects. Curiously, although the bid has been considered throughout as dealing with all three projects, the letter refers only to plaintiff's bid for cement block for the Sugar Estates School. Similarly, although purchase orders for the other two projects were later signed by both parties, the purchase order for the Sugar Estates School was never signed. It is the absence of a signed purchase order for the Sugar

Estates School which raises the issues that have been brought to us. In the letter of February 27th the plaintiff agreed to supply 4″, 6″, 8″ and 12″ blocks at specified prices. It went on to state that plaintiff was not at that time manufacturing 12″ block and in order to do so would be required to invest in a mold, which it would do "if we go to contract". It suggested that defendant might obtain a change in the specifications to permit the use of 8″ in place of 12″ block, but nevertheless requested "close estimates" on the number and sizes of block required and the time schedule of the defendant's requirements.

On May 1, 1961 the parties orally agreed that the price for 12″ block should be changed from 50¢ to 40¢ and, according to defendant's evidence, with this change made, defendant orally accepted plaintiff's bid of February 27, 1961. Thereafter, on May 5, 1961, defendant made up three purchase orders for the block, one for each project. Purchase order No. 1060 was for the Sugar Estates School and called for 41,000 blocks, including 17,000 12″ blocks. Purchase order No. 1061 for the Nisky Elementary School required 8,700 blocks in the 6″ and 4″ sizes; purchase order No. 1062 for the Cruz Bay–Red Hook Development required only 2,600 8″ blocks. Thus the only purchase order which dealt with 12″ blocks was No. 1060 for the Sugar Estates School. All three purchase orders provided that the quantities listed were approximate only and that the final quantities were to be based on actual job requirements with adjustment of the purchase orders to be made accordingly. A letter from defendant dated May 4, 1961,[1] accompanying purchase order No. 1060, stated that it had been prepared in accordance with a telephone conversation between the parties on May 1, 1961. It requested plaintiff to execute and return all three copies of purchase order No. 1060, stating that on their

---

[1] Appellant's appendix reproduces the letter as undated and we were told at the oral argument that it had no date. The original letter, however, is in the record and plainly shows the date.

receipt the defendant would execute and forward the original to the plaintiff.

On May 9th plaintiff signed and returned purchase orders No. 1060 and No. 1062 with an addendum on each which set out "list prices" slightly higher than the prices stated in the purchase orders and stated that the "reduced prices" fixed in the body of the purchase orders were to apply only to purchases paid for by the tenth day of the month following that in which the materials were delivered. Curiously again, the addendum "list prices" included a price for 12″ block although that size was contained only in purchase order No. 1060 which was never signed. Plaintiff's letter of May 9th which accompanied the other two purchase orders, went on to refer to purchase order No. 1060, stating that the 12″ mold would not be received, if shipped by sea, until June 30, 1961, that plaintiff was unwilling to bear the additional expense of air freight and, therefore, could not deliver the 12″ block by May 15, 1961, the date specified in the purchase order. Defendant replied by letter of May 15, 1961, in which it accepted the addendum to purchase orders No. 1061 and No. 1062, and insisted that the price arranged for 12″ block took into consideration the cost of obtaining the necessary mold. Defendant therefore refused to absorb any additional freight cost and insisted that plaintiff expedite delivery of the mold so that it could manufacture and deliver 12″ block "as soon as practicable" and in accordance with the arrangement reached with the plaintiff.

Delays ensued in the delivery of block. Ultimately plaintiff delivered to defendant a total of 38,816 blocks, including 9,391 12″ blocks. But because plaintiff was not able to fulfill defendant's requirements defendant was forced to purchase block from other sources at a higher price. It is this excess in cost of blocks which defendant claimed as damages.

The trial judge, sitting without a jury, found that the letter of February 27, 1961, constituted a bid, that the parties orally agreed on May 1st to change the price of 12″ block, that the defendant orally accepted the bid as thus changed and that this acceptance was confirmed in writing by the defendant's letter accompanying purchase order No. 1060. He concluded that by May 9, 1961, the "parties had gone to contract" on the contents of purchase order No. 1060 and that it was agreed that delivery of 12″ block would start May 15, 1961.

Appellant's argument consists chiefly of the contention that under the evidence no meeting of minds was proven and no contract was entered into by the parties for the block specified in purchase order No. 1060. A review of the evidence makes it clear that this argument is without merit.

■ There is, however, a serious question which has not been argued. It is whether the contract for the block specified in purchase order No. 1060 is unenforceable because of the Virgin Islands statute of frauds. 11 V. I. Code, § 404(a). Although ordinarily the question whether a contract is unenforceable because of the statute of frauds will not be considered for the first time on appeal (See 3 Williston on Contracts (Third Ed. 1960), § 527; Leonard v. Martling, 378 Pa. 339 (1954); Sferra v. Urling, 328 Pa. 161 (1937)), the appellant has from the beginning challenged the right of the defendant to recover on its counterclaim because purchase order No. 1060 was not signed by it. We shall therefore consider this question on its merits. The Virgin Islands statute of frauds provides:

"A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold . . . or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charge or his agent in that behalf."

248

■ This case clearly comes within the statute of frauds, representing as it does a sale of goods of a value in excess of $500. However, since plaintiff delivered 38,816 blocks and the combined quantity of the other two purchase orders amounted to 11,300 blocks it follows that more than 27,000 blocks, which included 9,391 of the 12″ size, were delivered under purchase order No. 1060. Part performance, especially in so substantial an amount, is enough to take the case out of the statute of frauds under the express language of the statute. Moreover, defendant paid plaintiff for 12″ blocks, which necessarily were delivered under purchase order No. 1060. So there was not only acceptance by the buyer of part of the blocks covered by purchase order No. 1060, but there was also receipt by the plaintiff, the seller, of their price. Indeed plaintiff brought the present suit for unearned discount taken on payments for 12″ block.

There was therefor a valid contract between the parties under purchase order No. 1060 and it is conceded that plaintiff did not make all of the deliveries which it required. The evidence justifies the conclusion of the trial court that the defendant was damaged by plaintiff's failure to perform the contract, and the judgment in favor of the defendant on its counterclaim therefore will be affirmed.

There remains for consideration plaintiff's contention that defendant had not complied with the condition on which the discount was based.

The prices quoted in the purchase orders were described in the addendum as "reduced prices" and were "To apply only to purchases paid for by the tenth of the month following that in which materials are delivered. In all other instances, the list prices [set out in the addendum] will prevail." The purchase orders required that plaintiff send defendant four copies of each invoice, of which two were to be sent with the shipment and two were to be mailed to its office in the Virgin Islands. The defendant's evidence was

that this would reduce the time required to process invoices for payment by four or five days.

The first deliveries of block were made in June and further shipments were made in July, August and September, 1961. All the shipments through September were accompanied by only two copies of the invoice. On September 28, 1961, the parties discussed, among other things, plaintiff's failure to send four invoices and defendant's failure to pay by the tenth of the following month. After this discussion plaintiff began to send four invoices and defendant made its payments by the tenth day of the following month. Plaintiff nevertheless continued to press for payment of the "unearned discount" for the months of June through September and on October 27th notified defendant that no further discounts would be granted unless its account was "brought current".

The total of plaintiff's claim for unearned discounts is $1,243.18, of which $794.94 was taken on the June, July, August and September shipments. The remaining $447.24 represents discounts on subsequent shipments which plaintiff claims were improperly taken at a time when defendant was in default on previous payments. This claim is unjustified. The language of the addendum is that if payment is made within the tenth day following the month of delivery the lower price prevails. The provision therefore is not defeated because there may have been earlier shipments for which payment had not been timely made.

On the claim for $795.94 the trial judge found that plaintiff was not entitled to recover because it was itself in default in having failed to make the required shipments, and also because it had not complied with the contract provision for four invoices.

While plaintiff's failure to make the required shipments was a material breach which would have warranted cancellation of the contract, defendant nevertheless con-

tinued to accept plaintiff's performance. In these circumstances defendant is not relieved of its contractual obligations; rather its remedy is in damages by way of recoupment or counterclaim. See 6 Williston on Contracts (Third Ed. 1962), §§ 871, 887F.

The finding that late payment was excused by plaintiff's failure to supply the four invoices is fully supported by the record as to the shipments of June, August and September. The payments for these shipments were made within a reasonable time in view of plaintiff's default in failing to send the required number of invoices.[2] The July shipments however present some difficulty. It is not clear when the payment was made; there are indications in the record that it may have been either on August 12,[3] or on September 5, 1961.[4] If the payment for the July shipments was made by August 12, 1961 defendant was entitled to take the discount, just as in the case of the June, August and September shipments. If payment was not made until September 5 defendant would not be entitled to the discount. Such a payment would be 26 days after the date required for discount, a default far beyond what could be excused by plaintiff's failure to send four invoices, which defendant's own evidence shows would delay payment for not more than four or five days. The apparent conflict between the August and September dates was not explained by either party and since there is no finding by the trial court when payment was made, we cannot now say whether it was timely. The fact must be decided by the trial court.

Since a remand will be necessary, we deem it desirable to

---

[2] The June shipments were paid for on July 14, the August shipments on September 14 and 18, and the September shipments on October 12 and 13.

[3] A carbon copy of plaintiff's letter (P-11) acknowledging receipt of the check bears the typewritten date August 2, 1961, which has been lined out in pencil and replaced by the notation "August 12."

[4] Plaintiff's ledger sheets show receipt of payment of the July shipments on September 5, 1961. The check itself was not introduced in evidence, but the detached voucher is available as an exhibit. It is undated but bears a handwritten notation: "5 Sept.".

consider the effect of the language of full receipt on the vouchers accompanying defendant's checks. This question will arise only if the court below should find that the payment for the July shipments was not made until September 5. Defendant's checks, including the one in payment of the July shipments were made up with detachable vouchers which bore the following language: "When detached and paid the above check becomes a receipt in full payment of the above accounts. No other receipt is necessary." The court below held that plaintiff waived any late payments, including that for the July shipments, by depositing the checks without seeking to cancel the statement that they were in full payment.

 It is the general rule that acceptance of a check tendered in full payment of a disputed claim in a greater amount will discharge the entire obligation. See 6 Williston on Contracts (Rev. Ed. 1938), § 1854. But regardless of the language which the debtor may place on the check or an accompanying letter, such a discharge will occur only if there existed at the time of payment a dispute which the check was tendered to compromise. See 1 Williston on Contracts (3d Ed. 1957), §§ 128–29; 1A Corbin on Contracts (1963), §§ 187–88. See also Richards v. Boyd, 344 F.2d 754 (3 Cir. 1965). In the present state of the record, and again in the absence of a specific finding by the trial court, we cannot say whether these two elements existed in this case.

Accordingly that part of the judgment of the court below which was in favor of the defendant on the plaintiff's claim will be vacated with direction to determine the date of payment for the July shipments and if that date should be September 5, 1961, to determine whether the check was tendered in compromise of a then existing dispute; and that part of the judgment of the court below in favor of the defendant and against the plaintiff for the sum of $3,464.46,

with interest and costs, will be affirmed, but that portion thereof which awards a counsel fee will be vacated so that the court below may also determine whether any change should be made in its award of counsel fee if it should conclude that plaintiff is entitled to recover the discount for the July shipments.