Cohen, Appellant, *v.* Sabin.

448

Argued April 23, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Walter W. Rabin,* with him *Meltzer and Schiffrin,* for appellant.

*Edward Davis,* with him *Davis, Casper & Muller,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1973:

Appellant, Raymond Cohen, was the Secretary-Treasurer of the Highway Truck Drivers and Helpers Local 107 from June, 1954, until his retirement in September, 1963. As an employee (since 1933) and officer of the union appellant was eligible, upon retirement, to receive a pension provided by the Teamsters Joint Council No. 53 Retirement Trust. This Trust was established on June 1, 1948, and administered by the appellee, Retirement Committee. Each individual participant in the Retirement Trust contributed five percent of his annual salary to the pension fund, while the union contributed ten percent of the same amount. As of the date of appellant's retirement he was entitled to receive a pension equalling 50 percent of his average monthly salary in the highest five consecutive years of the last ten years immediately preceding his retirement.

The record establishes that prior to January 3, 1960, appellant's annual salary from Local 107 was $25,000. On that date, the union, at a general meeting adopted a resolution granting appellant an annual take home pay of $25,000, "free and clear of taxes," as well as a tax free expense account of at least $100.00 per week.[1] Appellant was paid this "tax free" salary from

---

[1] The following appears in the minutes of the meeting of January 3, 1960: "Brother Joe Westenberg then spoke about how he felt about Brother Ray Cohen and how the members could express their appreciation for him. Brother Dave Levy of Continental made a motion that the Secretary-Treasurer's salary of $25,000 be given to him free and clear of taxes so that his take home pay equalled $25,000 and that he be given a minimum weekly expense allowance of $100 free and clear of taxes. Motion was seconded by Brother Tom Davish of Eastern States and was passed unanimously by the membership.

the date of this resolution until his retirement in September, 1963.

On October 28, 1963, after proper notice to appellant, the appellee, Retirement Committee held a meeting to secure information regarding appellant's salary. At this meeting appellant made a written application for a pension. Pursuant to this meeting appellant's pension application was unanimously approved based upon an annual salary of $25,000. At that time appellant expressed complete agreement with the Retirement Committee's determination.

Approximately two and a half years later, on May 2, 1966, appellant applied to the Retirement Committee for an increase in his pension. At that time he argued that his pension should have been based on a salary of approximately $41,000—the amount necessary to result in an after tax salary of $25,000. This request was denied on June 14, 1966. Two subsequent requests for an increase were also denied. Thereupon on December 13, 1967, appellant filed a complaint in equity seeking to compel the Retirement Committee to pay him the requested pension increase, from the date of his retirement in 1963.

Following an evidentiary hearing, the chancellor filed an adjudication containing findings of fact and conclusions of law, and entered a Decree Nisi dismissing appellant's complaint. Appellant's timely filed exceptions were heard and denied by the court en banc, and the Decree Nisi was made final on June 9, 1972. Appellant appeals from this final decree. We affirm.

In his adjudication the chancellor concluded that (1) appellant "waived all future rights to a pension

"Brother Harry Minnick of William Montgomery Company made a motion that Joe Grace and his family and Ray Cohen and his family be given a tax free vacation on the members of Local 107. Brother Jack Horowitz seconded the motion which was passed unanimously."

based on a salary in excess of $25,000 per year"; (2) "[t]he waiver was based on good consideration inasmuch as [appellant] received his pension based on $25,000 a year as well as the return of any overpayments that [appellant] had made to the Pension Trust"; and (3) "[t]he Retirement Committee acted reasonably . . . in deciding that [appellant's] salary for pension benefit purposes was $25,000 per year."

Appellant argues first that "as a matter of law" his salary for pension purposes was $41,000 and that the chancellor erred because he failed to determine appellant's salary for pension purposes. This claim must be rejected. Contrary to appellant's assertion, the chancellor did determine appellant's salary for pension purposes. Based on the evidence presented, the chancellor found that in October, 1963, the "Pension Committee unanimously approved [appellant's] pension application based on an annual salary of $25,000," and that the Committee acted reasonably in reaching that decision.

Manifestly, the chancellor's findings, affirmed by the court en banc, will not be disturbed on appeal if supported by sufficient evidence. As this Court held in *Dozor Agency, Inc. v. Rosenberg,* 431 Pa. 321, 323, 246 A. 2d 330, 331 (1968): "It is settled beyond question that the findings of fact of a chancellor, approved by the court en banc, are controlling unless the record reveals that such findings of fact are without evidentiary support of record or such findings are premised on erroneous inferences and deductions or an error of law. See: Bokoch v. Noon, 420 Pa. 80, 215 A. 2d 899 (1966); Weiherer v. Werley, 422 Pa. 18, 221 A. 2d 133 (1966)." Accord, *McRoberts v. Phelps,* 391 Pa. 591, 597-98, 138 A. 2d 439, 443 (1958); see *Craft Reupholstering Co. v. Rosenberg,* 420 Pa. 43, 44, 216 A. 2d 49, 50 (1966).

The chancellor found that the Resolution of January 3, 1960, awarding appellant his tax free salary was an "insurmountable monstrosity" and "was not of such

a nature as could be carried out," thereby making it extraordinarily cumbersome, if not impossible, to compute the exact amount of salary dollars the union had to pay appellant. For accounting purposes appellant's salary was pegged at $40,912 annually.

The chancellor also found that when appellant appeared before the Retirement Committee in 1963 to apply for his pension, the ambiguity caused by the 1960 Resolution created a legitimate dispute as to his actual salary for pension purposes. The Retirement Committee, under the terms of the Retirement Trust Agreement, was vested with sole and complete authority to investigate and determine eligibility and entitlement to pension benefits. The Trust Agreement also vested conclusive and binding authority in the Committee to pass on applications for benefits and to construe and apply the provisions of the Trust Agreement. The chancellor found that in reaching a compromise on this salary dispute the Retirement Committee was well within the bounds of the broad administrative authority delegated by the Trust Agreement. Our review of the record convinces us that the evidence adduced fully and firmly supports the chancellor's findings, and thus they may not be disturbed.

Appellant next contends that he did not waive his right subsequently to claim and receive a pension based upon a salary greater than $25,000. This assertion, however, is in direct conflict with the record supporting the chancellor's findings of fact. In his adjudication the chancellor found: "23. Chairman Backhus announced at the October 28, 1963 meeting that plaintiff had agreed to accept a pension based on his salary of $25,000. The plaintiff expressed complete agreement with what Chairman Backhus said." Again the evidence clearly supports this finding and will not be disturbed. See *Dozor Agency, Inc. v. Rosenberg,* supra.

Finally appellant argues that even if he waived his right to a greater pension, the waiver was ineffective for want of consideration. He maintains that the payment of the pension based on a $25,000 salary cannot be consideration because the Retirement Committee was already legally bound to pay that amount to appellant. Clearly performance of that which one is already legally obligated to do is not consideration sufficient to support a valid agreement.

However, it is equally clear that a compromise of a doubtful or disputed claim is proper and "that surrender or compromise of a doubtful claim and forbearance to sue thereon is sufficient consideration." *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 391, 123 A. 2d 663, 665 (1956); accord, *Kefover v. Potter Title and Trust Co.*, 320 Pa. 51, 181 Atl. 771 (1935); *Miller's Estate*, 279 Pa. 30, 123 Atl. 646 (1924); see also *Island Block Corp. v. Jefferson Const. Overseas, Inc.*, 349 F. 2d 322, 327 (3d Cir. 1965).

As one noted authority emphasized: "Not infrequently, though a claim is unliquidated or the subject of a bona fide and reasonable dispute, it is conceded that at least a certain amount is due. While it would appear that in paying this conceded part of the claim, the debtor was merely doing what he was previously bound to do, the law looks upon an unliquidated or disputed claim as a whole and does not attempt to set a value upon it, or to define the extent of the debtor's legal obligation. Accordingly, such a claim is dealt with as a chattel is dealt with, as something the adequacy of which as consideration will not be measured. *By the weight of authority, the payment of the amount admittedly due will support a promise to discharge the whole claim.*" Williston on Contracts §129 (3d ed. 1957) (footnotes omitted) (emphasis added).[2]

---

[2] The proposed revision of the Restatement of Contracts supports this position. Section 76B of that proposed draft states:

Thus when appellant surrendered his disputed claim to a pension based on a salary in excess of $25,000 in return for prompt payment[3] of the pension based on $25,000, a proper compromise agreement, supported by valid consideration, occurred. Additionally appellant's acceptance of the pension payments constituted an accord and satisfaction of the entire disputed contractual obligation under the Trust Agreement. This Court said in *Brunswick Corp. v. Levin,* 442 Pa. 488, 491, 276 A. 2d 532, 534 (1971) : " 'Where there is a dispute or disagreement between the debtor and creditor as to their respective rights, a payment tendered in full satisfaction of the other's claim operates as an accord and satisfaction if the payment is accepted and retained.' " See *Law v. Mackie,* 373 Pa. 212, 222, 95 A. 2d 656, 660 (1953) ; *Lucacher v. Kerson,* 355 Pa. 79, 80, 48 A. 2d 857, 858 (1946) (and the cases cited therein). The Restatement of Contracts emphasizes: "Acceptance by

---

"Payment of an obligation which is liquidated and undisputed is not consideration for a promise to surrender an unliquidated claim which is wholly distinct. See §76A. Whether in a particular case there is a single unliquidated claim or a combination of separate claims, some liquidated and some not, depends on the circumstances and the agreements of the parties. If there are no circumstances of unfair pressure or economic coercion and a disputed item is closely related to an undisputed item, the two are treated as making up a single unliquidated claim; and payment of the amount admittedly due can be consideration for a promise to surrender the entire claim." Restatement (Second) of Contracts, Tentative Draft No. 2, §76B (1965).

[3] The record reveals that "prompt payment" of his pension claim was part of the compromise agreement, because appellant knew he would begin serving a prison term, and he wanted to provide a source of income for his wife and family before he entered prison. See *Commonwealth v. Cohen,* 203 Pa. Superior Ct. 34, 199 A. 2d 139, cert. denied, 379 U.S. 902, 85 S. Ct. 191 (1964). If appellant had insisted upon a pension based on his claimed $41,000 salary his application would have been rejected by the Retirement Committee, and lengthy and time consuming litigation may have resulted. This appellant decided to avoid.

a creditor of any performance tendered by the debtor as satisfaction of a pre-existing contractual duty, or of a duty to make compensation, is not prevented from operating as satisfaction by the creditor's manifested refusal so to regard it." Id. §420 (1932).

Moreover, after appellant "expressed complete agreement" with the compromise he not only began receiving his pension payments, but the Retirement Committee also refunded to appellant and the Teamsters Local 107, $2,748.97 and $5,497.94 respectively. These sums represented the amounts of overpayments the employer and employee had made to the pension trust fund since January 3, 1960—the date of the Resolution granting appellant his "tax free" salary. The chancellor found that the sum of $2,748.97 was received and accepted by appellant.

In making this refund, appellee, the Retirement Committee, relied to its detriment on the compromise agreement it reached with appellant. Appellee did not have the use of those refunded sums to invest for pension purposes from October, 1963, to the present. If now required to retroactively increase the pension payments to appellant, appellee would suffer financial detriment because it was denied the benefit of those funds for investment purposes. Therefore, appellant is not only bound by a compromise agreement supported by valid consideration, but also by accepting and using the refunded overpayment, he is estopped from now attempting to seek an increase in his pension payment. See *Lombardo v. Gasparini Excavating Co.,* supra at 393, 123 A. 2d 667.

Decree affirmed. Each party to pay own costs.

Mr. Justice MANDERINO filed a dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I must respectfully dissent from the majority decision which allows an employer by merely disputing an

employee's pension rights to deprive that employee of his full rights. There is no evidence that the pension dispute was a bona fide dispute rather than a deliberate plan to deprive appellant of his full benefits. As the majority points out, the appellant was under extreme pressure to see that his family had an income before he began serving a prison term. Aside from these coercive elements which were present, there has been no showing that a *bona fide dispute* existed concerning appellant's pension. A dispute existed—but that is not enough. Any employer could disagree with an employee at the time of his retirement and force the employee to either wait for his benefits or accept less benefits.

In this case there is no dispute that for almost four years the appellant was paid a certain salary and made contributions to the pension fund based on that salary. Benefits under a pension fund are clear and ascertained according to a person's salary. Where was the bona fide dispute in this case under the terms and conditions of the pension fund? This has not been established. In this case the appellant's salary was known to the penny. All that was necessary was a mathematical computation concerning his pension. He was entitled to receive exactly what the terms of the pension fund provided—not a penny less. The only thing that has been established is that appellees thought the appellant's benefits were too high. There has been no showing, however, that his salary upon which his pension should have been based was not a proper salary duly authorized and duly paid for almost four years prior to his retirement. The pension benefits to which an employee is entitled upon retirement are in serious jeopardy under the holding of the majority. Any employer need only refuse to pay the benefits and force the employee to take a cut to avoid hardship to himself and his family. An employee should not have his pension cut because of other matters totally irrelevant to his pension contract rights. I must respectfully dissent.