**OCCIDENTAL CHEMICAL CORPORATION, a New York corporation, Plaintiff,**

v.

**ENVIRONMENTAL LINERS, INC., a Colorado corporation, Defendant.**

Civ. A. No. 93–5433.

United States District Court,
E.D. Pennsylvania.

July 22, 1994.

Philip W. Newcomer, Reed, Smith, Shaw & McClay, Philadelphia, PA, for plaintiff.

Warren L. Soffian, Donsky, Soffian, Allen and Bor, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Plaintiff, Occidental Chemical Corporation ("Oxychem"), is seeking $60,788.97 in damages for its claims of breach of contract and unjust enrichment. Defendant, Environmental Liners, Inc. ("Environmental"), has moved for summary judgment based on an affirmative defense of accord and satisfaction. Environmental contends that its debt to Oxychem was discharged when Oxychem negotiated a check from Environmental which had been marked "final payment." Oxychem argues, however, that its acceptance of the check did not constitute an accord and satisfaction as a matter of law and has cross-moved for partial summary judgment on the affirmative defense of accord and satisfaction. For the reasons discussed below, the court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for partial summary judgment.

## I. BACKGROUND

From September, 1990 to September, 1991, Oxychem sold 2.77 million pounds of polyvinyl chloride ("PVC") sheeting to Environmental. During a portion of that time, Oxychem had in place a rebate program which entitled purchasers to a price reduction. Oxychem discontinued the rebate program in April, 1991. The parties dispute how much the rebate program reduced Environmental's bill. Environmental claims that its bill should have been reduced by $70,000 under the rebate program, whereas Oxychem argues that the reduction should only have been $4,940.

On February 17, 1993, Environmental sent a check to Oxychem in the amount of $50,595.42. Environmental calculated this amount based on its entitlement to a $70,000 rebate. The check was clearly marked as "final payment." (Pl.'s Ex. H). Accompanying the check was a letter from Environmental informing Oxychem that "[t]his payment is tendered as payment in full and represents all outstanding monies." (Pl.'s Ex. G). Upon receipt of the check and accompanying letter, Oxychem negotiated the check and sent a letter back to Environmental stating that Environmental still had a balance of $60,788.94 on its account. The letter did not state whether Oxychem had negotiated the check at the time the letter was written.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if the evidence could cause a reasonable jury to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. The court must take the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980).

## III. DISCUSSION

■ An accord and satisfaction is a substitute contract between a debtor and creditor for the settlement of a debt by some alternative performance other than full payment of the debt. *See* Restatement (Second) of Contracts, § 281 (1981). Because an accord and satisfaction is a contract, it requires the elements of a contract: offer, acceptance and consideration. *Brunswick Corp. v. Levin,* 442 Pa. 488, 276 A.2d 532, 534 (1971); *Nowicki Constr. Co. v. Panar Corp., N.V.,* 342 Pa.Super. 8, 492 A.2d 36 (1985). The debtor's offer of a full payment check and the creditor's negotiation of that check usually constitute the offer and acceptance of an accord and satisfaction. The consideration is the resolution of an unliquidated or disputed claim. *Nowicki,* 492 A.2d at 40; *Hayden v. Coddington,* 169 Pa.Super. 174, 82 A.2d 285, 286 (1951).

The Pennsylvania Supreme Court summarized the defense of accord and satisfaction under Pennsylvania law in *Lucacher v. Ker-*

*son,* 355 Pa. 79, 48 A.2d 857 (1946), stating the following:

> Where there is a dispute or disagreement between the debtor and creditor as to their respective rights, a payment tendered in full satisfaction of the other's claim operates as an accord and satisfaction if the payment is accepted and retained. [footnote omitted] On the other hand, in the absence of such a controversy, the payment of a part of the amount due under a contract, even though accepted by the creditor as in full satisfaction of the debt, does not work a discharge of the entire indebtedness, for the reason that there is no consideration for the creditor's agreement that it should so operate.

*Id.* 48 A.2d at 858.

■ In the case at issue, all elements of a valid accord and satisfaction are present. Environmental made an offer by sending a check which was clearly marked "final payment" along with a letter which expressly stated that the check represented all outstanding monies owed to Oxychem. By negotiating the check Oxychem accepted Environmental's offer to settle the dispute. The consideration for the accord and satisfaction was the resolution of a bona fide dispute between the parties as to the amount of the debt owed to Oxychem. The dispute was whether the debt should be reduced by $70,-000 as claimed by Environmental or by $4,940 as claimed by Oxychem.

Oxychem contends, however, that the payment was not an accord and satisfaction because no dispute existed between the parties as to the amount which Environmental actually paid. According to Oxychem, there was never any dispute that Environmental owed at least the $50,595.42 that it paid as a final payment.[1] Oxychem contends that because Environmental offered nothing more than

---

1. In its memorandum of law, Environmental seems to accept the contention that no dispute existed as to whether Environmental owed the $50,595.42 that it paid. (*See* Def.'s Mem. at 7–8). There is some evidence, however, that this amount was disputed between the parties. In a letter to Oxychem, Kelly McCabe, counsel for Environmental, claimed that Environmental was entitled to a rebate of $77,145.06, not the $70,-000 that the was the basis for reducing the bill to

$50,595.42. (Def.'s Ex. C, letter of July 7, 1992). The reduction in the requested rebate demonstrates that the amount which Environmental actually paid was in dispute. Furthermore, Oxychem never responded to the letter in which Environmental laid out a payment plan which included a $70,000 rebate. This could be viewed as an acquiescence to Environmental's offered payment plan. Neither Environmental nor Oxychem addressed this argument in their briefs.

what it was already obligated to pay to Oxychem there was no consideration. Oxychem claims that in order for the offer to have consideration, Environmental must offer more than what it had already admitted owing. The Pennsylvania Supreme Court, however, has held that when a claim is the subject of a dispute over the amount due, but the parties concede that at least a certain amount is due, "the payment of the amount admittedly due will support the promise to discharge the whole claim." *Cohen v. Sabin*, 452 Pa. 447, 307 A.2d 845, 849 (1973) (quoting Williston on Contracts § 129 (3d ed. 1957)); *see* Williston on Contracts § 7:35 (4th ed. 1992). The court in *Cohen* stated that the law requires an unliquidated or disputed claim to be viewed as a whole and does not define the extent of the debtor's legal obligation. An offer to pay any portion of that claim as payment in full for the whole disputed claim is valid consideration. *Id.*

The plaintiff cites cases which hold that the payment of an amount admittedly due cannot be the basis for an accord and satisfaction. In each of these cases, however, the partial payment was for a distinct liability not part of the disputed debt. *See Sternbergh v. Fehling*, 396 Pa. 280, 152 A.2d 473 (1959) (affirming lower court's holding that the limiting language on separate checks for single shares of stock was release of liability to the purchaser only for the share purchased and not the entire disputed claim); *National Container Corp. v. Regal Corrugated Box Co.*, 383 Pa. 499, 119 A.2d 270, 273–74 (1956). For example, in *National Container*, the court stated that the payment of an amount admittedly due "furnishes no consideration for the discharge of a disputed claim for an additional and distinct amount or item of liability." *National Container*, 119 A.2d at 273. In *National Container*, a dispute arose between the parties over the amount defendant owed for a damaged shipment of cardboard. The amount paid and admittedly due was for merchandise sold to the defendant which was part of the damaged ship-

ment. *Id.* Because the amount admittedly owed was distinct from and unrelated to the disputed amount, the payment of the admitted debt furnished no consideration for the discharge of the disputed debt.

In the present case, Environmental's payment was not for an amount that was separate and distinct from the disputed debt. Environmental paid the amount which it claimed to be the entire amount due including the rebate. The cases cited by the plaintiff involved payments of debts which were not related to the disputed debt at issue. Here, there is only one indivisible debt for which Environmental offered a final payment. Even though Environmental admittedly owed $50,595.42, its offer to pay that amount as full payment of the entire disputed amount constituted consideration. The payment allowed for a prompt disposition of the dispute without resorting to judicial intervention. Therefore, there was consideration for the accord and satisfaction.

■ Oxychem also contends that there was no accord and satisfaction because Oxychem never accepted the terms of the accord offered by Environmental—there was no "meeting of the minds." Oxychem claims that the letter it sent to Environmental after receiving the final payment check demonstrates that Oxychem did not assent to the terms of the accord offered by Environmental.[2] The fact that Oxychem chose to negotiate a check that had been clearly designated as payment in full establishes Oxychem's assent to the terms of the accord. An offer may be accepted through the conduct of the offeree. *Accu–Weather, Inc. v. Thomas Broadcasting Co.*, 425 Pa.Super. 335, 625 A.2d 75 (1993). A creditor may not simply disregard the language on a check by crossing out the language or informing the debtor that the language would be ignored. *See Hagerty Oil Co. v. Chester County Sec. Fund, Inc.*, 248 Pa.Super. 456, 375 A.2d 186, 187 n. 1 (1977); *Melnick v. National Air Lines*, 189 Pa.Super. 316, 150 A.2d 566, 569–

---

**2.** In its memorandum of law, Oxychem mischaracterizes the content of the letter, stating that the letter "informed Environmental Liners that Oxychem was negotiating that check as only partial payment of the balance owed Oxychem." (Pl.'s

Mem. at 5–6). In fact, the letter did not state that the check had been negotiated as partial payment or even whether the check would be negotiated at all. (*See* Pl.'s Ex. I).

70 (1959); *Hutchinson v. Culbertson*, 161 Pa.Super. 519, 55 A.2d 567 (1947). Allowing the creditor to do so would bind the offeror to terms which he had not contemplated in initially making the offer. The letter sent by Environmental accompanying its check clearly stated that Environmental offered the check as a full settlement of its debt with Oxychem. The letter stated the following:

Please find enclosed Environmental Liners' final payment pursuant to the resolution for retirement of the Environmental Liners, Inc. account with your firm, proposed in August of 1992. We appreciate the courtesies you have extended regarding this matter and are satisfied that this payment retires all outstanding balances with your firm.

This payment is tendered as payment in full and represents all outstanding monies in accordance with the summary attached to this check # 17133. You are free to negotiate the enclosed check upon deposit by return mail of your receipt acknowledging payment in full by Environmental Liners of all outstanding accounts with your firm and a copy of notice to any and all appropriate credit reporting firms indicating that this contested account has been retired by payment in full of the stipulated account balance.

(Def.'s Ex. E). The person from Oxychem who received and acted upon this letter and the check was not an uninformed clerk, but the associate general counsel for the company. Oxychem cannot argue that it was unaware of the nature of the offer by Environmental. When Oxychem received the check marked final payment and the accompanying letter, it had two choices: 1) it could return the check or destroy it, and demand the full amount that it believed Environmental owed; or 2) cash the check as final payment of the debt. Oxychem has attempted to retain the benefit of both options by cashing the check and then ignoring the limiting language by demanding further payment. By negotiating the check Oxychem accepted the accord offered by Environmental.

Furthermore, Oxychem's claim that there was no meeting of the minds is undermined by the fact that there is no evidence that Oxychem ever expressly stated that it was negotiating the check as only a partial payment and not a full payment of the account. Oxychem did not cross out "final payment" or make any other indications on the check itself that it was not being accepted as the final payment it purported to be. Nor did the letter which Oxychem sent to Environmental expressly state that the check would be negotiated as partial payment. The letter merely stated that Oxychem had received the check and that Environmental still owed more money on its account. The letter could be interpreted to mean that Oxychem would not negotiate the check because it did not amount to a full payment. Oxychem's negotiation of a check clearly marked final payment amounted to an acceptance of Environmental's offer to settle the dispute. Therefore, under the common law of Pennsylvania, an accord and satisfaction occurred.

Oxychem argues, however, that in contracts for the sale of goods, such as the contract presently at issue, the common law defense of accord and satisfaction has been superseded by 13 Pa.Cons.Stat. § 1207, which is Pennsylvania's version of U.C.C. § 1–207. At the time of the events which gave rise to this law suit, the statute stated the following:

A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.

13 Pa.Cons.Stat. § 1207 (1984).[3]

Courts and commentators have struggled over the question of whether U.C.C. § 1–207

---

**3.** The Pennsylvania legislature later amended the statute to include the following:

(b) Exception.—Subsection (a) does not apply to an accord and satisfaction.

13 Pa.Cons.Stat. § 1207(b).

The parties agree that this dispute is governed by the statute as it existed prior to the amendment. Each party contends that the legislature's subsequent amendment supports its interpretation of the statute. The court, however, views this subsequent act of the legislature as having little or

supersedes the defense of accord and satisfaction and allows a creditor to accept and cash a final payment check while retaining its rights to obtain the remaining balance. The majority of courts have held that section 1–207 does not supersede the defense of accord and satisfaction. *See, e.g., County Fire Door Corp. v. C.F. Wooding Co.*, 202 Conn. 277, 520 A.2d 1028 (1987); *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 382 N.W.2d 313 (1986); *Flambeau Prod. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis.2d 95, 341 N.W.2d 655 (1984). Because this action is based on diversity jurisdiction, this court must predict how the Pennsylvania Supreme Court would decide the issue. *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987); *Wilson v. Asten–Hill Mfg. Co.*, 791 F.2d 30, 32 (3d Cir.1986). The Pennsylvania Supreme Court has never directly addressed the issue, although several cases have implicitly assumed that the common law defense of accord and satisfaction continued to apply after Pennsylvania enacted the U.C.C. in 1954. *See, e.g., Brunswick Corp. v. Levin*, 442 Pa. 488, 276 A.2d 532 (1971); *Sternbergh v. Fehling*, 396 Pa. 280, 152 A.2d 473, 476 (1959).[4]

■ Based on the language of section 1207 and the purpose behind its enactment, the court finds that the Pennsylvania Supreme Court would conclude that section 1207 does not apply to the use of final payment checks for the accord and satisfaction of disputed claims. First, section 1207 refers only to "performance" and does not mention "payment". The fact that the statute omits the term "payment" is significant because U.C.C. § 1–208 (13 Pa.Cons.Stat. § 1208) distinguishes between the terms "payment" and "performance." Because a final payment check is a payment and not performance,

section 1207 is inapplicable to final payment checks such as the one at the heart of the present case.

Section 1207 is also inapplicable to an accord and satisfaction through a final payment check because the act of reserving one's rights as described under section 1207 and the subsequent cashing of a full payment check constitute a rejection of the debtor's offer. The creditor who cashes a final payment check and then demands additional payment does not "perform[ ] or promise[ ] performance or assent to performance in a manner demanded or offered by the other party" as section 1207 requires. 13 Pa.Cons. Stat. § 1207. Rather, the creditor who disregards the limiting language of a final payment check is rejecting performance in the manner offered.

Based on the official comments to the U.C.C., the purpose behind U.C.C. § 1–207 was to provide "machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute." U.C.C. § 1–207, comment 1. Section 1–207 was to allow for an "interim adjustment in the course of performance." *Id.*, comment 2. An accord and satisfaction, by its very nature, is meant to completely resolve a disputed claim and put an end to the "continuation of performance." The purpose of section 1207 is not to deny the debtor the opportunity to resolve the dispute, but to allow the creditor to accept partial performance on a continuing basis while preserving its rights to full performance. The purpose of section 1207 would not be furthered by applying the section to an accord and satisfaction.

no interpretative value for the interpretation of the statute as it existed prior to its amendment.

4. The only Pennsylvania case which directly addressed the issue was an opinion by the Court of Common Pleas. In *KCF Construction, Inc. v. Amper*, 36 U.C.C.Rep. (Callaghan) 369, 1983 WL 160529 (Pa.Ct. of Comm.Pleas, Allegheny County, June 24, 1983), the court ruled that 13 Pa. Cons.Stat. § 1207 does not supersede the defense of accord and satisfaction. The court echoed the reasoning of several appellate court decisions of other jurisdictions. *See, e.g., County Fire Door Corp. v. C.F. Wooding Co.*, 202 Conn. 277, 520

A.2d 1028 (1987); *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 382 N.W.2d 313 (1986); *Flambeau Prod. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis.2d 95, 341 N.W.2d 655 (1984). The reasoning in *KCF Construction*, however, may be called into question because the contract at issue was for construction and renovation and not for the sale of goods. Section 1207 only applies to transactions for goods. *See* 13 Pa.Cons.Stat. § 2102. The court in *KCF Construction* did not explain why it addressed the issue of application of section 1207 to a contract which was not for the sale of goods.

Also, under 13 Pa.Cons.Stat. § 1103, the common law of Pennsylvania is retained by the commercial code as authoritative where not expressly superseded by it. *See Carpel v. Saget Studios, Inc.,* 326 F.Supp. 1331 (E.D.Pa.1971). If section 1207 were intended to supersede the common law defense of accord and satisfaction, then it would be reasonable to expect the drafters to state in the statute or its comments that common law had been superseded.

Furthermore, even if the court were to find that section 1207 had superseded the defense of accord and satisfaction, the facts of this case would not fulfill the requirements of section 1207. Oxychem did not expressly protest the terms of the offer by Environmental. It did not write any words of protest on the actual check. The letter it sent to Environmental did not say that it would cash the check under protest or that it would reserve any rights upon cashing the check. The letter simply stated that the check was not for the full amount of the account and that Environmental still owed $60,788. Section 1207 requires that a party explicitly reserve its rights by using such words as "without prejudice" and "under protest." Oxychem made no such explicit reservation of its rights.

Thus, the payment tendered by Environmental and accepted by Oxychem was an accord and satisfaction of the disputed claim between the parties. Environmental's motion for summary judgment, therefore, must be granted.

## IV. CONCLUSION

For the reasons discussed above, the court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.