IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

March 26, 2024 03:54 PM
SCT-Civ-2022-0023
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

**JANET V. JULIEN,**
    Appellant/Defendant,

v.

**VICTOR S. MATTHEW,**
    Appellee/Plaintiff.

)
)
)
)
)
)
)
)
)
)

**S. Ct. Civ. No. 2022-0023**
Re: Super. Ct. Civ. No. SX-2020-RV-00003 (STX)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Douglas A. Brady

Argued: November 14, 2022
Filed: March 26, 2024

Cite as: 2024 V.I. 15

**BEFORE:**      **RHYS S. HODGE**, Chief Justice; **MARIA CABRET**, Associate Justice and **IVE ARLINGTON SWAN,** Associate Justice.

**APPEARANCES:**

**Janet Julien**
St. Croix, U.S.V.I.
    *Pro Se,*

**Victor Matthew**
St. Croix, U.S.V.I.
    *Pro Se.*

## OPINION OF THE COURT

**SWAN, Associate Justice**.

¶1    Appellant Janet V. Julien ("Julien") challenges the Superior Court Appellate Division's affirmation of a Magistrate Division judgment declaring that she owes appellee Victor S. Matthew ("Matthew") $1,706 for the balance of the cost for work he completed in remodeling her kitchen. For the reasons elucidated below, we affirm the Appellate Division's order. [1]

## I.    FACTS AND PROCEDURAL HISTORY

¶2    In April 2019, Julien decided to remodel the kitchen and to retile the floors in the dining room and kitchen in her home in St. Croix, U.S. Virgin Islands. After researching options, Julien selected cabinets from a Home Depot store in North Carolina and floor tiles from Home Depot in St. Croix. In June 2019, while shopping at the Home Depot store in St. Croix, Julien learned that Matthew is an inexpensive contractor. The Home Depot employee who recommended Matthew to Julien also provided Julien with Matthew's contact information. Subsequently, Matthew visited Julien's home to discuss the work she wanted completed.

¶3    Ultimately, Matthew quoted Julien a price of $6,000 to complete the remodel. However, Matthew required Julien to make a deposit before he would commence work. Accordingly, Julien gave Matthew a $2,000 check. After obtaining the $2,000 deposit, Matthew sent Julien photographs of cabinets he had previously completed and emailed her a copy of a document stating the work he would perform. In the email, Matthew delineated the principal areas of work as the

---

[1] Pursuant to rule changes promulgated on June 1, 2019, the Virgin Islands Superior Court no longer has an Appellate Division and reference to that division in this opinion is made merely to preserve prior terminology. Therefore, final orders or judgments from the Magistrate Division are merely appealable to the judges of the Superior Court of the Virgin Islands. *See* V.I. Super. Ct. R. 322.

removal and installation of kitchen cabinets, backsplash, granite bar top, granite countertop, and floor tiles. The email also stated that Julien was responsible for purchasing all materials for the remodel project.

¶4     In the last week of June 2019, Matthew commenced the remodeling project by removing the old kitchen cabinets, backsplash, and countertops. On June 29, 2019, Matthew wanted to start tiling the kitchen floor. However, Matthew told Julien that the kitchen floor was uneven. To correct the problem, Matthew informed Julien that he needed to cover the kitchen floor with a layer of concrete ready-mix. To obtain the concrete, Matthew traveled with Julien to Home Depot in St. Croix where she purchased five bags of concrete and a one gallon bottle of concrete bonding. After returning to Julien's home, Matthew poured the concrete on Julien's kitchen floor.

¶5     On July 15, 2019, Matthew received a second installment payment of $2,000 and began to tile the kitchen floor, which remained uneven (presumably because the procedure Matthew employed to level the kitchen floor was unsuccessful). Julien claimed that at no time did Matthew inform her that the kitchen floor remained uneven.

¶6     At some juncture during the remodeling work, Matthew began cutting Julien's new kitchen cabinets. When Julien saw what Matthew was doing, she ordered him to stop, but he persisted because the uneven kitchen floor made it necessary to cut the bottom of the cabinets so they would lie properly on the floor. However, when the new appliances arrived, Julien claimed that the cabinets over the refrigerator were too low, and she had to hire another contractor to install them and to replace the granite countertop which cracked when Matthew admittedly installed it incorrectly.

¶7     Finally, Matthew, who Julien said was not a licensed electrician, relocated an electrical box that was inside one of Julien's old kitchen cabinets. Matthew advised Julien that the electrical box's location inside the cabinet was a fire hazard and, therefore, illegal. Thus, Matthew surmised the electrical box needed to be relocated to another location. According to Matthew, the cost to relocate the electrical box was normally more than $1,000, but he agreed to relocate Julien's electrical box for $850. However, although she purchased a new electrical box so Matthew could relocate the box, Julien claimed in her appellate brief that she never authorized Matthew to relocate the electrical box. Ultimately, Julien became frustrated with Matthew's performance and perturbed by the money she expended to remedy his mistakes. Therefore, she opted to terminate her contract with Matthew before the remodel project was completed.

¶8     On February 10, 2020, Matthew filed a small claims complaint against Julien for the unpaid balance of the contract price - $2,850. Julien counterclaimed for $5,000 for emotional anguish and for the money she spent to rectify Matthew's alleged mistakes.

¶9     On March 10, 2020, the Magistrate Division held a hearing on Matthew's complaint. During the proceeding, Matthew explained the relationship between himself and Julien, which he claimed was exacerbated by Julien's frequent excuses for not purchasing necessary materials for the project and her decision to not allow him to complete the job. In response, Julien presented the court with invoices, canceled checks, and testimony to demonstrate that she found Matthew's work unacceptable and, therefore, exasperating; she testified that she paid different workmen to correct Matthew's numerous mistakes. Moreover, Julien also claimed to have witnesses who could substantiate her claims and discuss Matthew's unprofessional behavior. However, the court

*Julien v. Matthew*                         2024 V.I. 15
S. Ct. Civ. No. 2022-0023
Opinion of the Court
Page 5 of 22

declared that those witnesses were unnecessary because they would not add new evidence to the record. Therefore, the court refused to allow Julien to call them.

¶10     Ultimately, the court declared that its duty was to assess whether Matthew was entitled to damages (balance of the contract price) because of the agreement he had with Julien. Moreover, the court also opined it had to simultaneously ascertain whether Julien was entitled to damages because of the costs she incurred as a result of correcting Matthew's frequent job mistakes.

Regarding the electrical work, the court concluded that Julien sanctioned the relocation of the electrical box which, according to the court, was supported by Julien's purchase of a new electrical panel box. The court concluded that Julien was entitled to $150 - the price she paid to correct Matthew's substandard electrical workmanship.

¶11     Concerning the cabinetry, the court concluded that Matthew's cutting of the cabinets was not exceedingly unusual, as Matthew explained during the proceeding. Specifically, the court referenced the unevenness of floors as a reason why cutting the cabinets might have been necessary. Despite Matthew's efforts to stabilize the floor, the court said it was apparent that Matthew's attempts to level Julien's kitchen floor were unsuccessful, if he still needed to cut the cabinets. The court concluded that it could not hold Matthew liable for cutting the cabinets because he adhered to the standard to which the parties agreed - a clearance of 71 inches.

¶12     Pertaining to the cracked granite countertop, the court stated that Matthew admitted to cracking the countertop as he installed it. However, the court also acknowledged that Matthew could have fixed the countertop but he was never afforded the opportunity to do so because Julien refused to let him finish the remodeling work. The court stated that Julien only claimed that the

cracked countertop was never repaired. Therefore, the court assigned a modest value of $200 for the damaged countertop because there was no evidence in the record that established its value.

¶13     Regarding the backsplash, the court concluded it was installed incorrectly because Matthew failed to seal the limestone tile and it became discolored when he applied grout to it. However, the court further stated that Julien opted to replace the tile although Matthew said he could have cleaned it. Therefore, the court assigned a nominal value of $200 for the replaced tile because there was no evidence in the record that established the cost to replace it.

¶14     Regarding the granite bar top, the court said that Matthew admitted that he failed to complete it. Julien provided evidence to verify that she paid another contractor a $275 deposit and an additional $319 to have it installed. The court concluded that these amounts resulted in a total of $594 in costs.

¶15     Finally, the court reconciled the amounts owed to both Matthew and Julien. The court opined that Julien was entitled to $150 for the electrical work, $200 for the cracked granite countertop, $200 for replacing the backsplash, and $594 for the bar top which totaled $1,144. Next, the court concluded that Matthew was entitled to $2,850 for the balance of the remodeling and the electrical work. Lastly, the court subtracted Julien's damage award from Matthew's damage award and adjudged that Julien still owed Matthew $1,706.

¶16     Following entry of the Magistrate's March 10, 2020 amended judgment, Julien filed a notice of appeal in the Superior Court Appellate Division on March 17, 2020.

¶17     On March 21, 2022, the Appellate Division entered an order that affirmed the Magistrate Division's judgment. In the order, the Superior Court proclaimed that it had reviewed all evidence

in the record, including the transcript from the March 10, 2020 hearing. Following the review, the

court declared that it found no error in the magistrate's factual findings nor legal conclusions.

Therefore, the Appellate Division affirmed the Magistrate Division's 2020 decision.

¶18     On April 13, 2022, Julien perfected the instant appeal.

## II.     JURISDICTION

¶19     "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final

decrees, and final orders of the Superior Court." 4 V.I.C. § 32(a). "An order that disposes of all

claims submitted to the Superior Court is considered final for the purposes of appeal." *Jung v.

Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)). In

this case, the Superior Court Appellate Division's March 21, 2022 order disposed of all claims

submitted for adjudication. Therefore, the order is final and we exercise jurisdiction over Julien's

appeal.

## III.     STANDARD OF REVIEW

¶20     We review the trial court's factual findings for clear error and exercise plenary review over

its legal determinations. *Thomas v. People*, 63 V.I. 595, 602-03 (V.I. 2015) (citing *Simmonds v.

People*, 53 V.I. 549, 555 (V.I. 2010)). Moreover, "[w]hen reviewing decisions of a judge of the

Appellate Division of the Superior Court, we typically consider the underlying rulings made by

the magistrate only to the extent that they were adopted or affirmed by the judge of the Appellate

Division." *Maso v. Morales*, 57 V.I. 627, 632 (V.I. 2012). However, "[i]n most cases, we will

decline to directly review the magistrate's rulings, out of consideration for the 'unique relationship'

between the Magistrate [Division] and Appellate Division[] of the Superior Court, and traditional

appellate practices." *Id*. Furthermore, an order from the Appellate Division affirming a final judgment, order, or decree of the Magistrate Division is a final order from which an appeal lies. *Moore v. Walters*, 61 V.I. 502, 506 (V.I. 2014). Finally, the purpose of the Small Claims Division is to do substantial justice between the parties. V.I. SMALL CLAIMS R. 1(d).[2,3] *See Greene v. Merch. Mkt.*, No. ST-2015-SM-292, 2015 WL 13894874, at *2 (V.I Super. Ct. Oct. 5, 2015) (unpublished) ("The purpose of the small claims statute is "to permit individuals with small claims access to the court in a simple inexpensive manner and without the need to retain counsel.").

## IV. DISCUSSION

¶21 On appeal, Julien asserts three central issues. First, she contends that the Superior Court Magistrate Division impermissibly shifted the burden of proof from Matthew to her. Second, she argues that the Magistrate Division erred in refusing to allow her to call witnesses. Third, Julien contends the Magistrate Division erred in awarding Matthew damages for his electrical work. However, before we address Julien's allegations, we will review the law of contracts in the Virgin Islands and briefly evaluate the legitimacy of Julien's notice of appeal. Accordingly, we commence the analysis with a brief review of Julien's deficient notice of appeal.

¶22 Rule 4(c) of the Virgin Islands Rules of Appellate Procedure, in pertinent part, states that a notice of appeal shall identify the order appealed from and the issues to be presented on appeal.[4]

---

[2] "Construction. These rules shall be construed to implement the simple, speedy, and inexpensive trial of actions in the Small Claims Division, and in such manner as to do substantial justice between the parties according to the rules of substantive law." V.I. SMALL CLAIMS R. 1(d).

[3] 4 V.I.C. § 123(4) empowers the Magistrate Division to hear small claims cases. *See* 4 V.I.C. § 123(4).

[4] "The notice of appeal shall specify the party or parties taking the appeal and, even if the notice is electronically filed, it shall contain their physical addresses and telephone numbers; shall designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal. An appeal shall not be dismissed

Here, Julien's April 13, 2022 notice of appeal lacks reference to the order being appealed or the issues to be presented on appeal. Although we have consistently stated that pro se litigants enjoy considerable latitude regarding the structure and contents of court documents and the procedure to file them, we remind all litigants that this Court's rules should be reviewed prior to submitting court documents to ensure filings comport with those stipulations. *See Marsh-Monsanto v. Clarenbach*, 66 V.I. 366, 376 (V.I. 2017) ("[I]t is our policy to give pro se litigants greater leeway in dealing with matters of procedure and pleading…"); *compare Serieux v. Schneider Clinic*, 74 V.I. 429, 435 (V.I. 2021) ("[P]ro se litigants need [to] follow court procedures and rules. Pro se litigants are still expected to comply with the rules . . ., and a pro se litigant's apparent ignorance of the rules of the Court does not provide good cause to excuse failure to comply with those rules."). Usually, as we have observed, "[w]hen a notice of appeal fails to designate an order [being appealed], that order is not properly before this Court for consideration." *V.I. Taxi Ass'n v. V.I. Port Auth.*, 67 V.I. 643, 673 (V.I. 2017) (citing *Dessout v. Brin*, 66 V.I. 308 & n.2 (V.I. 2017)). Nonetheless, in this case, Matthew has not claimed any prejudice arising from Julien's deficient notice of appeal, and the issues on appeal have been briefed, as well as the question whether the Appellate Division was correct in affirming the Magistrate Division's March 10, 2020 amended judgment. Under these circumstances, applying our established precedent, and the policy favoring lenity in pro se matters, it is appropriate for this Court to exercise its discretion to consider the appeal, notwithstanding the deficient notice of appeal. *See, e.g., V.I. Taxi Ass'n*, 67 V.I. at 674 (failure to identify Appellate Division's order with specificity did not preclude the Virgin Islands

---

solely for defects of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice, but any omission of matters of substance may be grounds for sanctions." APP. P. R. 4(c).

Supreme Court from addressing the appellant's claim that such order should be reversed, where both parties briefed the issue of whether that order should be affirmed or reversed and the appellee claimed no prejudice arising from the failure to specify the order in the notice of appeal). Thus, we proceed to evaluate the merits of this appeal.

¶23    In the Virgin Islands, a contract is a promise that is either stated in oral or written words (express contract), or a promise that can be inferred wholly or partially by conduct (implied contract). Essential to the creation of a contract are the elements of offer and acceptance, and acceptance may be inferred through conduct. *Peppertree Terrace v. Williams*, 52 V.I. 225, 241 (V.I. 2009). "Additionally, an enforceable contract also requires . . . a bargained-for legal benefit or detriment, commonly known as consideration,[5] and a manifestation of mutual assent. A manifestation of mutual assent or a meeting of the minds requires that the two parties that intend to form a contract are in agreement to the same terms[, which] must be proven objectively." *Williams v. Univ. of the V.I.*, No. ST-oo-CV-148, 2019 WL 301345, at *2 (V.I. Super. Ct. Jan.18, 2019) (unpublished) (citations omitted). *See* RESTATEMENT (SECOND) OF CONTRACTS § 18 (1981) ("Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance."); *Hawkeye Commodity Promotions, Inc. v. Miller*, 432 F.Supp.2d 822, 845 (N.D. Iowa 2006) ("In addition to offer and acceptance, another essential element of a binding contract is consideration."); *Ecore International, Inc. v. Downey*, 343 F.Supp.3d 459, 487 (E.D. Pa. 2018) ("To establish the existence of an agreement one must show that: (1) both parties

---

[5] "(1) To constitute consideration, a performance or a return promise must be bargained for. (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. (3) The performance may consist of (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation. (4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person." RESTATEMENT (SECOND) OF CONTRACTS § 71 (1981).

have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration."); *see also Tourism Indus., Inc. v. Benjamin*, No. 360/1979, 1982 WL 1035049, at \*2 (V.I. Terr. Ct. May 27, 1982) (unpublished) (explaining that adequate consideration entails an exchange of promises rather than the performance of the promises); *Daniel v. Shamar Pemberton & Carty Enters.*, No. ST-2019-CV-00157, 2020 WL 7979165, at \*2 (V.I. Super. Ct. Dec. 9, 2020) (unpublished) ("[C]onsideration 'requires a performance or a return promise that has been bargained for.'").

¶24    A contract breach occurs when one or multiple contracting parties fail to perform duties established by the contract. *Creative Minds LLC v. Reef Broadcasting, Inc.*, No. ST-11-CV-131, 2014 WL 4908588, at \*8 (V.I. Super. Ct. Sept. 24, 2014) (unpublished). *See* RESTATEMENT (SECOND) OF CONTRACTS § 235 (1981) ("When performance of a duty under a contract is due any non-performance is a breach."); *Key Bank Nat'l Ass'n v. Components by John McCoy, Inc.*, No. 06-Civ. 13164 (SC), 2008 WL 4865989, at \*13 (S.D.N.Y. Nov. 6, 2008) (unpublished) ("[T]he failure of a party to perform its obligations under a valid and binding contract constitutes a breach.") (citations omitted). To establish a breach of contract claim under Virgin Islands law, a plaintiff must prove "that a contract existed, that there was a duty created by that contract, that such duty was breached, and that he suffered damages as a result." *Chapman v. Cornwall*, 58 V.I. 431, 437 (V.I. 2013). *See McGrath v. Liberty Mut. Fire Ins. Co.*, No. 2:19-CV-36 JCM, 2019 WL 9100192, at \*2 (D. Nev. May 13, 2019) ("To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained

damages") (citations omitted); *Fleming Steel Co. v. Jacobs Engineering Group, Inc.*, 373 F.Supp.3d 567, 582 (W.D. Pa. 2019) ("In order to state a claim for breach of contract under Pennsylvania law, Plaintiff must show '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'") (citations omitted).

¶25    Importantly, a contract breach can be material or minor. *Creative Minds*, 2014 WL 4908588, at *6. A material breach is significant or essential if it deprives the injured party of the benefit he or she reasonably expected to obtain from the contract and affects that party's decision making ability regarding two options – (1) whether to permit the breaching party to cure, or (2) to forego his or her own reciprocal obligations under the contract. *Id.* at *7; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 241. Material breaches excuse the non-breaching party's performance and allow for a myriad of remedies. *Id.* A minor breach only provides for nominal damages. *Id.* (citations omitted). *See United States ex rel. Virginia Beach Mech. Services v. SAMCO Const. Co.*, 39 F.Supp.2d 661, 670 (E.D. Va. 1999) ("When a party does not fully complete its contract, the non-breaching party's remedies turn on whether that failure to perform constitutes a material or a minor breach. A minor breach may allow the aggrieved party to recover damages or a set-off against the breaching party, but it does not excuse that aggrieved party from performing."); *Frank Lloyd Wright Foundation v. Kroeter*, 697 F.Supp.2d 1118, 1133 (D. Ariz. 2010) ("[T]he victim of a material or total breach is excused from further performance" under the contract, while "the victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him.") (citations omitted).

¶26    Notably, the purpose of contract damages "is [to] give the injured party the benefit of the bargain and to the extent possible put him in the position he would have been in had the contract

been performed." *Tourism Indus.*, 1982 WL 1035049, at *2. Specifically, when a party breaches a contract, the non-breaching party is entitled to damages. *Key Bank*, 2008 WL 4865989, at *13. *See Rivera v. Sharp*, No. 2008-0020, 2021 WL 2228492, at *15 (D.V.I. June 1, 2021) ("It is hornbook law that when one party to a contract commits a material breach, the non-breacher has the option of either continuing the contract and suing for partial breach, or terminating the agreement in its entirety.") (citations omitted); *Island Block Corp. v. Jefferson Constr. Overseas*, 349 F.2d 322, 326 (3d Cir. 1965) (finding under Virgin Islands law that "[w]hile plaintiff's failure to make the required shipments was a material breach which would have warranted cancellation of the contract, defendant nevertheless continued to accept plaintiff's performance. In these circumstances defendant is not relieved of its contractual obligations; rather its remedy is in damages by way of recoupment or counterclaim") (citations omitted).

¶27     However, if both parties breach the contract, the court may preclude recovery for either party or offset the recovery of one party with the recovery of the other party because of their mutual breach.[6] *See Westinghouse Electric Corp. v. Garret Corp.*, 601 F.2d 155, 158 (4th Cir. 1979) ("[U]nder . . . general contract law, courts have held that in some instances where both parties are at fault (or in default) neither may recover.... Whether this doctrine is described as failure of consideration, failure to satisfy a condition precedent, or mutual breach of contract, it is clear that in proper circumstances a court may refuse to allow recovery by either party to an agreement because of their mutual fault, which in contract terms might be more properly described as mutual

---

[6] "[I]n the absence of provisions in the contract to the contrary, where both parties thereto are in default, or on a breach thereof wherein both have participated, neither one may recover damages therefor from the other. Furthermore, where both parties are in equal fault, money or property advanced in furtherance of the contract cannot be recovered. On the other hand, in some circumstances, where both parties have been guilty of breach of contract, each may be liable in damages to the other." 17B C.J.S. Contracts § 758 (2022).

default.") (citations omitted); *compare Nguyen v. Harris*, No. ST-06-CV-253, 2009 WL 10742371, at *3 (V.I. Super. Ct. Mar. 13, 2009) (unpublished) (explaining that when parties are found to have breached a contract, damages are apportioned in accordance with the liability of each party) (citations omitted). Finally, "[a] fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited in recovery to the loss actually suffered; he is not entitled to be placed in a better position than he would have been if the contract had not been broken." *Hamilton v. Bayer Healthcare Pharmaceuticals*, No. CIV-18-1240-C, 2019 WL 4228892, at *3 (W.D. Okla. Sept. 5, 2019) (citations omitted).

¶28 Here, Julien and Matthew initially negotiated orally for Matthew to renovate Julien's kitchen in exchange for a $6,000 contract price. However, following a preliminary assessment of Julien's residence, Matthew sent a formal acceptance via email of Julien's oral offer. It is axiomatic that "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Amber Chemical, Inc. v. Reilly Industries, Inc.*, No. 1:06-CV-06090 OWW SMS, 2007 WL 512410, at *4 (E.D. Cal. Feb. 14, 2007) (unpublished) (citations omitted). In this case, Julien's pre-contract negotiations with Matthew ripened into an offer because of her willingness to have Matthew renovate her abode. Consequently, Matthew's email to Julien, which contained the scope of the work to be performed as well as the contract price, represented his assent or acceptance of Julien's terms, which were memorialized in the email. J.A. 3. *See McDermott Intern., Inc. v. Industrial Risk Insurers*, No. Civ. A. 01–3027, 2003 WL 22928802, at *5 (E.D. La. Dec. 9, 2003) (unpublished) ("A contract is an agreement between two parties whereby one party makes an offer and the other party accepts that offer, thereby establishing a concurrence in understanding the

terms.") (citations omitted). In terms of consideration, Julien promised to pay Matthew the $6,000 contract price and gave him a $2,000 deposit. Therefore, both Matthew and Julien assented to the terms of their agreement which demonstrated that they intended to be bound by it. Accordingly, a valid contract existed between the parties.

¶29     However, at some juncture during the performance of the contract, Matthew made numerous mistakes including not sealing the limestone tiles for the backsplash and damaging the granite counter top. These mistakes constituted a material breach of the parties' contract because they involved work essential to the agreement between Matthew and Julien and they affected Julien's decision making, in terms of her choice as to whether to permit Matthew to cure the mistakes, or to not satisfy her own obligations under the contract with Matthew. At that time, Julien could have terminated the contract or proceeded with the contract and sought damages. Yet, Julien failed to pursue either option. *See Rivera v. Sharp*, No. 2008-0020, 2021 WL 2228492, at *10 (D.V.I. June 1, 2021) ("A party to a contract may waive a condition precedent to its performance, or a breach of the contract's provisions, by conduct manifesting a continued recognition of the contract's existence after learning of the breach or failure of the condition, such as by continuing to perform or accepting performance under the contract and receiving the benefit of it.... [B]y choosing to proceed following the nonoccurrence of a condition or a breach, the party who would otherwise have been excused may broadly be said to have waived the failure of the condition or the breach. There are few principles of contract law better established, or more uniformly acknowledged, than the rule that when a contract not fully performed on either side is continued in spite of a known excuse, the right to rely on the known excuse is waived; in turn, the defense

based on the excuse is lost and the party who would otherwise have been excused is liable if it subsequently fails to perform.") (citations omitted).

¶30     Although Julien ultimately terminated the contract with Matthew, she only did so after acknowledging Matthew's numerous mistakes without penalty. Moreover, Julien waited until Matthew had completed the majority of the remodeling work before she chose to terminate the contract with him and discharge him from the job. Furthermore, after she terminated the contract with Matthew, Julien refused to pay him the balance of the contract price despite Matthew's substantial job performance. Under those circumstances, Julien kept the benefit of Matthew's work without paying him. Therefore, Julien also materially breached the contract. Accordingly, because both parties breached the contract, the Magistrate Division did not err when it apportioned liability between Julien and Matthew. Similarly, the Appellate Division also did not err when it affirmed the Magistrate Division's March 10, 2020 amended judgment.

¶31     We now turn to the claims Julien asserts in her appellate brief- namely the Magistrate Division's impermissible shifting of the burden of proof to her, the Magistrate Division's failure to allow her to call witnesses, and the Magistrate Division's award of damages to Matthew for Julien's failure to pay him for his electrical work. To reiterate, we ordinarily only examine the basis for a Superior Court Magistrate Division's judgment when the Appellate Division has adopted or affirmed the trial court's reasoning. Because the Appellate Division expressly stated in its March 22, 2022 order that it reviewed the trial record and because it ultimately affirmed the Magistrate Division's ruling, we will therefore review the Magistrate Division's rationale to address Julien's contentions. However, because the Magistrate Division is not bound to apply rules of evidence in a Small Claims case and the fact that Julien's arguments implicate certain

evidentiary rules, we will only briefly examine Julien's contentions for the sake of completeness. *See* V.I. SMALL CLAIMS R. 4(b)(5).[7]

¶32    On appeal, Julien asserts that the Magistrate Division impermissibly shifted the burden of proof to her.[8]

¶ 33    "In the Virgin Islands, the burden of proof in civil cases is governed by title 5, section 740(5)[9] of the Virgin Islands Code." *Wilkinson v. Wilkinson*, 70 V.I. 901, 914-15 (V.I. 2019). Essentially, 5 V.I.C. § 740(5) states that civil cases in the Virgin Islands must be proven by a preponderance of evidence standard. *Id. See also The Village, V.I. Partners in Recovery v. Gov't of the V.I.*, 39 V.I. 109, 113 (V.I. 1998) (explaining that the plaintiff normally has the burden of proof in civil cases); However, when a defendant in a breach of contract claim desires to offset damages, the burden of proof shifts to the defendant. *Entergy Services, Inc. v. Fed. Energy Regulatory Comm'n*, No. 17-1251, 2021 WL 3082798, at *10 (D.D.C. July 13, 2021). *See Cowen Co. v. Houck Mfg. Co.*, 249 F. 285, 288 (2nd Cir. 1918) ("During the progress of the trial it often happens that a party gives evidence tending to establish his allegation, sufficient it may be to establish it prima facie, and it is sometimes said the burden of proof is then shifted. All that is

---

[7] "Conduct of the Trial. The court shall conduct the trial in such manner as to do substantial justice between the parties according to the rules of substantive law, and shall not be bound by the statutes or rules governing practice, procedure, pleadings, or evidence, except those statutes and rules relating to privileged communications and the swearing of parties and witnesses. All proceedings shall be recorded, either electronically or stenographically." V.I. SMALL CLAIMS R. 4(b)(5).

[8] In her appellate brief, Julien cites former Superior Court Rule 64 for the proposition that a Magistrate hearing a small claims matter must conduct the proceeding in accordance with substantive law and the magistrate in her case failed to do so because he incorrectly shifted the burden of proof to her. Although we acknowledge that the purpose of the Small Claims Division is to do substantial justice, we note that Superior Court Rule 64 is repealed and has no bearing on the Magistrate Division's execution of a small claims case.

[9] "The jury, subject to the control of the court in the cases specified in this title, are the judges of the effect and value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions that: (5) In civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory the finding shall be according to the preponderance of evidence; that in criminal cases guilt shall be established beyond reasonable doubt." 5 V.I.C. § 740(5).

meant by this is that there is a necessity of evidence to answer the prima facie case, or it will prevail
. . .").

¶ 34    "The term 'burden of proof' incorporates two distinct burdens: the burden of persuasion
and the burden of production. . . . The burden of production is a party's duty to introduce 'evidence
sufficient as a matter of law to enable a rational fact finder to find that particular proposition of
fact is true' and to find in favor of the producing party." *Childs v. Gladstone*, No. 17CV408-JAH
(BLM), 2019 WL 4849170, at *2, (S.D. Cal. Oct. 1, 2019) (unpublished) (citations omitted). *See
Bruner v. Office of Pers. Mgmt.*, 996 F.2d 290, 293 (Fed. Cir. 1993) ("The burden of production,
also called the burden of going forward, is initially upon the person with the burden of proof, and
generally requires the production of sufficient evidence to support a finding in favor of that person.
. . . The burden of production then shifts to the other party, who must, in turn, produce enough
evidence to raise a question of material fact.") (citations omitted). Finally, to satisfy the burden of
production, litigants may employ direct evidence like witness testimony or testimony from an
individual with direct knowledge of the situation, or they may utilize indirect evidence like
circumstantial evidence from which reasonable inferences can be drawn. *Burke v. People*, 60 V.I.
257, 263 (V.I. 2013).

¶35    Here, the court initially questioned Matthew about the case because he was the plaintiff
who had the burden of proof. J.A. 46-48. In response, Matthew provided testimony about his issues
with Julien's remodel contract. Subsequently, the court proceeded to question Julien about
Matthew's assertions and her independent contentions concerning the contract to renovate her
kitchen and dining room. J.A. 48-50. In response, Julien provided the court with testimony and
demonstrative evidence, including invoices and canceled checks that verified she had paid multiple

workmen to correct Matthew's numerous mistakes. J.A. 50-70. Accordingly, because Matthew, as plaintiff, provided evidence in the form of testimony before Julien attempted to refute Matthew's evidence with additional testimony and exhibits, we are unpersuaded that the Magistrate Division impermissibly shifted the burden of proof to Julien. As previously stated, the purpose of the Small Claims Division is to do substantial justice, which the court did when it first questioned Matthew to compel production of sufficient evidence to substantiate his claim before it turned to Julien to rebut Matthew's contentions. Therefore, we conclude that the Magistrate Division did not impermissibly shift the burden of proof to Julien.

¶36    Next, Julien alleges that the Magistrate Division erred when it refused to allow her to call witnesses. Under Virgin Islands Evidence Rule 701, lay witnesses may only testify about matters rationally related to the witness's perception and helpful in understanding the witness's testimony or to ascertain a fact issue. V.I. R. EVID. 701. However, Rule 701 precludes a lay witness's testimony about scientific, technical, or specialized matters outside the witness's scope of knowledge. *Id*. Moreover, the ability of a lay witness to testify pursuant to Rule 701 is tempered by Virgin Islands Evidence Rule 403.[10] Essentially, Rule 403 allows a court to refuse the admission of evidence it deems to be unbeneficial, prejudicial, time consuming, or needlessly presenting cumulative evidence. Thus, a litigant's right to call witnesses is not unfettered and is premised on a witness's ability to aid the litigation as well as conserve important judicial resources.

¶37    Moreover, pursuant to VI Small Claims Rule 4(b)(5), "[t]he court shall conduct the trial in such manner as to do substantial justice between the parties according to the rules of substantive

---

[10] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence." V.I. R. EVID. 403

law, and shall not be bound by the statutes or rules governing practice, procedure, pleadings, or evidence, except those statutes and rules relating to privileged communications and the swearing of parties and witnesses."

¶38     Here, although the court opined that the testimony of Julien's witnesses was unnecessary because it would not add anything new to the trial record, we remind the Magistrate Division that the right to call witnesses is an inherent aspect of our system of justice. *See McDermott v. Manhattan, Eye, Ear & Throat Hosp.*, 203 N.E.2d 469, 472-73 (N.Y. 1964) (explaining that in civil cases, it is a well-established right to call any witness, even an adverse party, if his testimony is relevant to the issues in the case). Thus, while the Magistrate was free to determine that the testimony of Julien's witnesses was irrelevant or cumulative, we believe that the best course of conduct in this matter was for the Magistrate to allow Julien's witnesses to testify before concluding their testimony was inapplicable or cumulative evidence in the case.

¶39     More importantly, the purpose of the Small Claims Division is to do substantial justice. Previously, we noted that "substantial justice contemplates more than the interests of the defendant . . . [it] also contemplates the plaintiff's interests." *Spencer v. Navarro*, No. 2007-69, 2009 WL 1078144, at *3 (V.I. Apr. 8, 2009) (unpublished). Additionally, because the role of the judge in a small claims action is to achieve substantial justice, he or she must do so even if it means that a liberal reading of the facts or law would afford relief to a pro se small claims litigant which would ordinarily not be available to a pro se or other litigant in the Superior Court's Civil Division. *Davis v. Turner*, 71 V.I. 1185, 1189 (D.V.I. 2018). Therefore, Superior Court magistrates should afford litigants some latitude in presenting and explaining their case.

¶40    Here, the magistrate opined that there was no need for Julien to call witnesses despite Julien's ability to call them to offer witness testimony to support her case. J.A. 101-103. Undeniably, the magistrate's refusal to hear the testimony of Julien's witnesses was an error that potentially circumvented the purpose of the small claims division to render substantial justice for all litigants. Regardless, the magistrate provided a sufficient foundation for his small claims decision. Accordingly, there is no need to remand this matter merely on the issue of the ability of litigants to call witnesses in a small claims case because we remind the magistrates of the Superior Court of the need to allow litigants to offer witness testimony in support of their claims. Any other conclusion potentially thwarts, impedes, and obstructs the purpose of the division of small claims to render substantial justice between litigants.

¶41    Finally, Julien argues that the Magistrate Division erred in awarding Matthew damages for his deficient electrical work. We will not belabor this point. Functioning as fact finder, the magistrate was in the best position to observe the parties and assess their credibility. *See Moore v. Walters*, 61 V.I. 502, 508 (V.I. 2014) ("Th[e] explicit determination of credibility by the magistrate cannot be overturned if a rational person could agree with the assessment of the trial court, as is the case here." (emphasis added)); *Rahhal v. Clarke*, No. SX-2021-SM-00027, 2022 WL 2918305, at *2 (V.I. Super. Ct. July 20, 2022) ("Because cases in the Magistrate Division are decided without a jury, the magistrate court hears the testimony and considers the evidence before finding the facts and applying the law. And when the law is unsettled, the magistrate court must determine what law should apply before finding what facts are relevant."). The court thoroughly questioned both parties about each of their areas of contention. Ultimately, the magistrate believed Matthew, ruled in his favor on the issue of the inferior electrical work, and apportioned liability accordingly.

Therefore, we find no error in the Magistrate Division's damages award to Matthew for his electrical work. *See Valerino v. Manning*, 68 V.I. 276, 300 (V.I. 2018) ("The Magistrate Division is the trial court in all Magistrate Division cases.").

## V.     CONCLUSION

¶42     Therefore, we affirm the Superior Court Appellate Division's affirmation of the Magistrate Division's March 10, 2020 amended judgment finding no error in the trial court's offset of Julien's damages from Matthew's damages because we recognize that the goal of the Superior Court Small Claims Division is to do substantial justice, which we firmly believe the court accomplished here.

Dated this 26 day of March 2024

BY THE COURT:

**IVE ARLINGTON SWAN**
**Associate Justice**

ATTEST:
VERONICA J. HANDY, ESQ.
Clerk of the Court

By: _____
**Deputy Clerk**

Date: March 26, 2024